STATE, Appellant, v. HUTNIK, Respondent.

*No. State 104.   Argued June 7, 1968.—Decided June 28, 1968.*
(Also reported in 159 N. W. 2d 733.)

For the appellant the cause was argued by *William A. Platz,* assistant attorney general, with whom on the briefs were *Bronson C. La Follette,* attorney general, and *Robert E. Sutton,* assistant attorney general.

For the respondent there was a brief and oral argument by *Arthur J. Cirilli* of Superior, attorney, and *William L. McCusker* of Madison of counsel.

HEFFERNAN, J. The first ground upon which the court dismissed the complaint, that the statute was unconstitutionally vague, has already been resolved by this court. We held in *State v. Alfonsi* (1967), 33 Wis. 2d 469, 147 N. W. 2d 550, that the statute was sufficiently clear and definite to withstand this constitutional attack.

The second basis for the judge's dismissal, that there was a failure of proof, is, however, squarely before us. It is the claim of the state that sufficient facts were presented to allow the case to go to the jury and that, in any event, there must be a new trial because the judge excluded certain evidence that, as the state contends, would clearly have supplied any deficiency in proof.

The evidentiary errors that are claimed by the state to be of controlling importance were the judge's refusal to permit the testimony of Edward E. Hoebel and the refusal to permit the use of Anthony Wise's grand-jury testimony either to refresh his recollection or to impeach him.

We conclude that the court erred in the exclusion of the testimony of Edward E. Hoebel and that the exclusion of such evidence was prejudicial to the state.

The record makes it clear that, some time prior to the trial, the state apprised defense counsel of the purport of Hoebel's proposed testimony. Hoebel was called to the stand and, at the request of defense counsel, the

parties retired to the judge's chambers, where objection was made to Hoebel's testimony. At that time the state made the following offer of proof:

"*Mr. Platz:* Well, we will prove by this witness that last fall during the adjourned session of the legislature he had a conversation by telephone with Mr. Hutnik regarding Bill 933–A, that Mr. Hutnik was the one who called Mr. Hoebel, that Mr. Hutnik made a request of Mr. Hoebel for some money in connection with Bill 933–A, that he used some slang expression for money which the witness Hoebel does not recall, but he understood what it meant and that he then informed Mr. Hutnik that his association had nothing to give as an association or himself on the accelerated highway bill and told Mr. Hutnik that he did not know who would be giving out any cash or money on a bill like this unless it was a chamber of commerce. And he said they didn't have it and that his association certainly was not giving out anything, to which Mr. Hutnik responded in substance, 'Well, I am going to have to vote against the bill.' That Mr. Hoebel then said, 'That is fine. We don't care enough about it. If you want to do that, that is your privilege,' or words to that effect."

In support of this offer of proof Mr. Platz, assistant attorney general, stated that the purpose of the testimony was "to show the intent, scheme and plan of Mr. Hutnik to obtain money from people to support this bill."

Over the objections of defense counsel, the trial judge ruled that the testimony offered was competent and that Hoebel could proceed with his testimony.

It soon developed, however, that Hoebel was unable to tell with exactitude the date when he was allegedly solicited by Hutnik. He did not know whether it was before or after October 18th, the date of the offense (on or about) with which Hutnik was charged. It was established, however, that the contact was made sometime in October and was during a special fall session of the legislature.[1] When the lack of preciseness in Hoebel's

---

[1] We take judicial notice of the fact that this special session of the legislature commenced on October 4, 1965, and terminated on November 4, 1965.

testimony became apparent, counsel for the defendant objected to further testimony on the basis that it was not established that the conversation took place prior to October 18th, the alleged date of the crime. The court upheld this objection, stating, "I will not permit any testimony from this witness unless it predates October 18, 1966 [5]."

The trial judge's oral decision at the time of the dismissal of the complaint was devoted primarily to the question of whether or not the statute was unconstitutionally vague. No reference was made therein to the offered testimony of Edward E. Hoebel. The clear purpose of the testimony was to establish Hutnik's intent and plan to obtain money from persons in exchange for his promise to support the bill. This testimony if believed would tend to show that he had acted in a similar manner in regard to the same bill and on a date closely related in time to the offense charged. Judge MURPHY, however, predicated his refusal to admit the evidence on the basis that the alleged conversation was not shown to have taken place prior to October 18th. This, however, is not the test that is properly to be applied in making the determination of the admissibility of other events or occurrences that may show intent. The question is one of remoteness and not of chronology. 1 Wharton, *Criminal Evidence* (12th ed.), p. 563, sec. 245, points out that, "Evidence of offenses committed subsequently to the crime under prosecution may be admitted, as in the case of prior offenses, if not too remote." This court in *Herde v. State* (1941), 236 Wis. 408, 413, 295 N. W. 684, stated:

"In proof of criminal intent, the conduct of a defendant on other occasions closely connected in point of time and plan may at times be relevant to throw light on the defendant's motives and intentions while doing the act complained of. *Smith v. State*, 195 Wis. 555, 560, 218 N. W. 822; *State v. Meating*, 202 Wis. 47, 50, 231 N. W. 263. 'The intention with which a particular act is done often constitutes the burden of the inquiry, and to prove the intent it becomes necessary, in many instances, to extend

the examination beyond the particular transaction concerning which the accused is upon trial. For the purpose, therefore, of proving intent, not of proving the act itself, it is often permissible to show other criminal transactions of the same sort springing from like mental conditions.' 2 Jones, Evidence (2d ed.), p. 1161, sec. 624."

*State v. Lombardi* (1959), 8 Wis. 2d 421, 99 N. W. 2d 829, involved a charge against a sheriff for a wilful dereliction of duty. A portion of the evidence tended to prove that the defendant had knowledge of the operation of a house of prostitution at a time subsequent to the date of the offense charged. It was contended that this was inadmissible in evidence because this testimony only established the defendant's knowledge of prostitution subsequent to the date charged in the information. The court quoted with approval, page 437, the instruction to the jury:

" 'Evidence of the commission of other offenses is admissible where the evidence tends to establish some ingredient of the offense charged such as knowledge, intent, system, or design, and also to show that the crime charged is a part of a scheme or plan which includes numerous offenses. *This rule applies to all such offenses whether committed before or after the date of the offense charged in the information so long as such offenses are connected and similar in character.' "* (Emphasis supplied.)

Comment to Rule 311 of the Model Code of Evidence points out that other occurrences are admissible on questions of intent and design. The comment to 311 states:

"The cases are legion . . . which admit such evidence when offered to prove motive, intent, preparation, plan or identity."

If the occurrence is relevant and not excludable for some reason properly within the discretion of the trial judge, it may not be excluded from evidence merely because it was subsequent to the act charged.

It is not seriously contended by the defendant, however, that Hoebel's testimony was inadmissible. Rather, it is contended that it was proper for the judge in the exercise of discretion to exclude such testimony. We have in the recent cases of *Whitty v. State* (1967), 34 Wis. 2d 278, 149 N. W. 2d 557,[2] and in *Price v. State* (1967), 37 Wis. 2d 117, 154 N. W. 2d 222, quoted with approval and have adopted the principles of Rule 303 of the Model Code of Evidence.

It is apparent from the offer of proof in regard to Hoebel that his testimony had significant probative value. Nevertheless, we have by our approval of Rule 303 concluded that, "The judge may in his discretion exclude evidence if he finds that its probative value is outweighed" by risks incident to its admission. This means that for this court to affirm what is contended to be a discretionary act there must be evidence that discretion was in fact exercised. If a judge bases the exercise of his discretion upon an error of law, his conduct is beyond the limits of discretion. *Miller v. Belanger* (1957), 275 Wis. 187, 81 N. W. 2d 545; *Estate of Baumgarten* (1961), 12 Wis. 2d 212, 107 N. W. 2d 169. Here, while Judge MURPHY referred to the probative value of the testimony, it was apparent that he concluded that as a matter of law no occurrence after the date stated in the information was relevant or probative. This is clear error and is indicative that the judge acted beyond the limits of his discretion. Rule 303 of the Model Code of Evidence enumerates some balancing factors that are to be considered by the trial judge in exercising his discretion to exclude otherwise admissible evidence. They are that the proposed evidence would:

[2] We stated in *Whitty* that the standard of revelancy when the evidence is offered on the issue of knowledge, intent, or state of mind is not as strict as where the prior occurrence relates to the identity of the person.

"(a) necessitate undue consumption of time, or
"(b) create substantial danger of undue prejudice or of confusing the issues or of misleading the jury, or
"(c) unfairly surprise a party who has not had reasonable ground to anticipate that such evidence would be offered."

Neither (a) nor (c) are pertinent to the present case. Hoebel's testimony could have been completed in a comparatively short period of time. Moreover, the record makes it apparent that defense counsel had available the gist of the proposed testimony prior to trial. Thus the problem of admitting this evidence involved neither the consumption of undue trial time nor unfair surprise to the defendant. Conceivably, the judge might have based his exclusion upon (b), that the admission "create[s] substantial danger of undue prejudice or of confusing the issues or of misleading the jury." However, no such basis for exclusion was articulated by the judge, and Rule 303 is implicit in its requirement that the judge "find" that the probative value of otherwise admissible evidence is outweighed by risks that would result if the evidence is not excluded.

While we do not conclude that a formal finding is necessary, there should be evidence in the record that discretion was in fact exercised and the basis of that exercise of discretion should be set forth. No such finding or rationale was made. Rather it is clear that the exclusion was based solely upon an error of law.

The trial judge in his oral opinion from the bench emphasized that his dismissal was predicated upon his belief that it was the duty of the state to show the intent of the defendant. The evidence excluded had that purpose. It is thus apparent that the state's failure to prove its case beyond a reasonable doubt was, in the trial judge's mind at least, closely connected with the lack of proof of any design, plan, or intent on the part of the defendant. Under these circumstances we are satisfied that the error was highly prejudicial and necessitates a reversal. Should

the Hoebel testimony again be offered at a retrial, the trial judge may consider anew whether in the exercise of discretion the probative value of the testimony is outweighed by possible risks incident to its admission.

Another prejudicial error alleged by the state was the refusal of the trial judge to declare Anthony Wise hostile and to permit the use of grand-jury testimony to refresh his recollection or to impeach him. This grand-jury testimony was omitted from the trial record by reason of the failure of state's counsel to submit it as a proposed exhibit after it had been refused in evidence. We thus are unable to determine whether Wise's trial testimony constituted so marked a deviation from the grand-jury testimony that he properly should have been found to be a hostile witness. However, we need not, in view of our determination set forth above, decide whether or not the grand-jury testimony was improperly excluded. The determination of whether a witness is hostile or not is discretionary and must, except in cases of abuse, be left to the determination of the trial judge.

Under the rule of this case a new trial may be had, and whether or not the grand-jury testimony of Anthony Wise is relevant in any subsequent proceedings will have to be determined then.

*By the Court.*—Judgment reversed and the cause is remanded for such further proceedings as may be consistent with this opinion.