**FAN FARE, INC., Plaintiff,**

v.

**FOURDEL INDUSTRIES, LTD., Ransburg Corporation, and Ransburg Manufacturing Corp., Defendants.**

Civ. A. No. 82–042–N.

United States District Court,
M.D. Alabama, N.D.

May 16, 1983.

C. Knox McLaney, Lewis B. Hickman, Jr., and J. Paul Lowery, Montgomery, Ala., for plaintiff.

D. Coleman Yarbrough, Jones, Murray, Stewart & Yarbrough, Montgomery, Ala., for defendants.

## ORDER

MYRON H. THOMPSON, District Judge.

This case is now before the court on the plaintiff Fan Fare, Inc.'s October 28, 1982, motion for new trial. In that motion Fan Fare raised a number of grounds for new trial, but in its briefs of November 10, November 29, and December 10, 1982, has urged essentially that the court erred by requiring the jury to find the existence of

agency under two counts of the complaint as a prerequisite to recovery against two of the defendants.[1] For the following reasons the motion is due to be denied.

## I.

Fan Fare, a small producer of wooden fan blades for ceiling fans, brought this action against Fourdel Industries, Ltd., ("Fourdel"), the Ransburg Corporation, and Ransburg Manufacturing Corporation ("the Ransburg Corporations" or "Ransburg"). The suit was for damage allegedly sustained by Fan Fare from the inability of a Ransburg paint machine to paint wooden blades. Fan Fare claimed that the machine did not perform as promised and that the failure of the machine to perform properly resulted in significant financial injury to Fan Fare. Fan Fare's claims consisted of: (1) an express warranty claim against Fourdel and the Ransburg Corporations, (2) an implied warranty claim against Fourdel and the Ransburg Corporations, and (3) a fraud claim against the Ransburg Corporations.

The case was tried to a jury on October 12–18, 1982. In the course of instructing the jury the court explained that before finding the Ransburg Corporations liable on any of the three claims it would be necessary for the jury to find that either Fourdel or its president, Terry Lenahan, had acted as Ransburg's agent:

Now, before discussing any of the three claims separately with you, I want to discuss one principle of law applicable to the Ransburg Corporations only, and determinative of any liability of the Ransburg Corporations as to all three claims. This principle of law is that before you can find in favor of Fan Fare on any of these claims against the Ransburg Corporations, you must first find by a preponderance of the evidence, that either Fourdel or Mr. Terrence Lenahan, or both, were agents of the Ransburg Corporations.

After explaining the elements of agency the court instructed the jury as to the substantive law of Fan Fare's three claims.

After concluding the charge, and outside the presence of the jury, the court asked the attorneys whether there were any objections to the court's charge. Fan Fare's counsel made no objection to the charge on agency. The jury then began deliberations. After the lunch break, the jury resumed deliberations but soon requested reinstruction on the issue of agency. Before bringing the jury back into the courtroom the court read the jury's question to the attorneys and asked whether there was any objection to repeating the charge on agency:

BY THE COURT: Now, gentlemen, I've received a note from the jury. The note is as follows: "Please furnish us an explanation of agency again, please", and I'm now filing the note with the clerk. Does the plaintiff have any objection to my giving that charge?

BY MR. MCLANEY: No objection.

BY THE COURT: Does the defendant?

BY MR. YARBROUGH: None, Your Honor.

The jury was then brought back into the courtroom and the court repeated the charge on agency. After repeating the charge, and outside the presence of the jury, the court again heard from the attorneys. At this point Fan Fare raised an objection to the agency charge on the grounds that under a recent Alabama Supreme Court case it was not necessary to find agency as a prerequisite to fraud when the defendants, as in this case, produced brochures and a movie which allegedly contained material misrepresentations about the defendants' product. The court overruled Fan Fare's objection on the grounds that (1) it was untimely, (2) Fan Fare had abandoned the theory of direct liability at the charge conference, and (3) negation of the agency requirement at that point would prejudice the rights of the defendants and impair the fairness of the trial. The jury then retired. Later that afternoon, the

1. Fan Fare's other grounds are clearly without    merit and are not discussed in this order.

jury returned with a verdict in favor of all defendants.

By its motion for new trial, Fan Fare now challenges the court's agency instruction as to both the fraud and express warranty claims.[2]

■ However, before addressing directly Fan Fare's motion for new trial, the court needs to make two observations, one factual and the other legal. The first observation is that it is the court's distinct recollection that Fan Fare's counsel raised the issue of agency at the charge conference—held prior to final arguments and the court's charge—but then specifically abandoned the issue.[3] However, the court need not rely solely on its own recollection, because the actions and statements of Fan Fare's counsel unequivocally support the conclusion that Fan Fare abandoned the issue. First, Fan Fare failed to object to the agency charge after the court initially charged the jury. Second, Fan Fare failed to object to the agency charge upon request by the jury for reinstruction. And third, and most significantly, Fan Fare's counsel admitted that they

declined to object to the charge after it was initially given because they were confident in their proof of agency and did not wish to seek a new charge which might confuse the jury.[4] However they objected to the charge after it was repeated by the court because it became apparent to them at that time that the jury must have been concerned with the agency issue.[5]

■ The second observation is that any error on the part of the court was not in giving the agency instruction: during the trial Fan Fare traveled on the agency theory and presented substantial evidence from which the jury could have inferred an agency relationship between the Ransburg Corporations and Fourdel. Fan Fare had in effect two alternative theories of recovery: one was that the Ransburg Corporations were directly liable under the fraud and express warranty claims and the other was that the corporations were liable on an agency theory.[6] Any error, therefore, on the court's part was in its failure to charge the jury, when it requested reinstruc-

2. There is a serious question as to whether Fan Fare's objection to the agency charge on the fraud claim was sufficient to be considered as challenging the agency charge on the express warranty claim also. However, for purposes of the motion for new trial, the court will assume that the objection was sufficient to challenge both claims.

3. The charge conference was not recorded.

4. Fan Fare's counsel stated at the March 17, 1983, supplemental hearing on the motion for new trial that:
   The reason we didn't, when you gave your first charge to the jury, is what I explained to the court before, we thought we had proved agency so conclusively by either estoppel, or apparent authority, that it would not constitute a problem, and we didn't want to confuse the jury by attempting to give another charge.

5. Fan Fare's counsel stated at the March 17, 1983, supplemental hearing on the motion for new trial that:
   When the jury came back, in approximately 30 minutes, it became obvious that there was a question in their minds, at least to us, as to agency, which is when I did apprise the court, and give you the name of the Spartan Pools case, on the fraud count.

6. The thrust of Fan Fare's case was that Fourdel's president, Terry Lenahan, was acting as the agent of both Fourdel and the Ransburg Corporations for the purpose of selling the Ransburg paint machines. This agency relationship included distribution of product information and representations about the ability of the machines to paint wooden fan blades. Fan Fare claimed that Lenahan introduced himself as the Ransburg representative and acted in a manner fully consistent with his claimed agency function before, during, and after the sale of the paint machine. Fan Fare even asserted in its pretrial contentions that Fourdel and Ransburg were one in same entity. Fan Fare also asserted, however, that the Ransburg Corporations acted directly to influence Fan Fare, apart from the agency relationship with Fourdel or Lenahan. The only evidence of this direct action, however, consisted of Ransburg's production of a sales brochure and film, which purported to represent that the Ransburg machine would in fact paint wood. In addition, Ransburg provided a written warranty with the machines themselves which stated that Ransburg's liability would be limited to the replacement of defective parts. Fan Fare did not claim that the paint machine was defective, rather Fan Fare claimed that it would not perform its intended function, viz., paint wooden fan blades.

tion, on both of Fan Fare's theories of liability.[7]

## II.

■ Rule 59 of the Federal Rules of Civil Procedure provides in part that "A new trial may be granted to all or any of the parties and on all or part of the issues ... in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States...."[8] A motion for new trial may raise factual, equitable, and legal issues. As the Supreme Court stated in *Montgomery Ward & Co. v. Duncan,* 311 U.S. 243, 251, 61 S.Ct. 189, 194, 85 L.Ed. 147 (1940):

> The motion for a new trial may invoke the discretion of the court in so far as it is bottomed on the claim that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving; and may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury.

Claimed errors in jury instruction may, therefore, provide grounds for a new trial; but these errors generally must have been brought to the court's attention at the appropriate time in compliance with Rule 51 of the Federal Rules of Civil Procedure.[9] *Cruthirds v. RCI, Inc.,* 624 F.2d 632, 635 (5th Cir.1980); *see* 11 Wright & Miller, Federal Practice and Procedure § 2805 at 39 (1973).

■ A jury is entitled to the court's complete charge before it begins any part of its fact deliberations and determinations. *First National Bank v. Small Business Administration,* 429 F.2d 280, 284 (5th Cir. 1970). To assure this, Rule 51 of the Federal Rules of Civil Procedure provides that:

> At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the court shall instruct the jury after the arguments are completed. No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury.

The fundamental purpose of this rule is to inform the trial judge of possible errors so that he may have an opportunity to correct them before the case is submitted to the jury. *Kroger Co. v. Roadrunner Transportation, Inc.,* 634 F.2d 228, 230 (5th Cir. Unit B 1981); *see also Gay v. P.K. Lindsay Co., Inc.,* 666 F.2d 710, 712 (1st Cir.1981), *cert. denied,* 456 U.S. 975, 102 S.Ct. 2240, 72 L.Ed.2d 849 (1982); *Robinson v. Heilman,* 563 F.2d 1304, 1306 (9th Cir.1977). An additional purpose of the rule is to prevent a litigant from taking advantage of an error which could have been rectified by the court if called to its attention by a timely

---

**7.** While Alabama law is clear that the production of sales material in and of itself may constitute fraud, *Spartan Pools v. Royal,* 386 So.2d 421, 423 (Ala.1980), Alabama law is not clear on whether the same acts may independently create an express warranty. § 7–2–313(1)(a), Ala.Code (1975). As a result, there is a serious question of law as to whether it would have been proper to submit the express warranty claim to the jury absent evidence of agency. However, in view of the disposition of the motion for new trial on other grounds, this question need not be reached by the court.

**8.** As for the general manner in which the rule is written, Wright & Miller states that "[t]he draftsmen of the rules found that it was impracticable to enumerate all the grounds for a new trial. Thus the rule is stated in broad terms." 11 Wright & Miller, Federal Practice and Procedure § 2805 at 37 (1973) (footnote omitted).

**9.** A court, however, may not grant a new trial unless refusal to do so would be "inconsistent with substantial justice." Fed.R.Civ.P. 61; *see* 7 Moore's Federal Practice ¶ 61.10 (1982).

and specific objection. *Corriz v. Naranjo,* 667 F.2d 892, 896 (10th Cir.1981), *cert. dismissed,* —— U.S. ——, 103 S.Ct. 5, 73 L.Ed.2d 1394 (1982); *Missouri Pacific R. Co. v. Star City Gravel Co.,* 592 F.2d 455, 459 (8th Cir.1979). There are only two exceptions to the strict application of Rule 51. These are: when the basis of the objection has been made clear to the district court and further objection would have been unavailing, and when the error in the instruction was so fundamental and plain as to create a miscarriage of justice. *Industrial Development Board v. Fuqua Industries,* 523 F.2d 1226, 1238 (5th Cir.1975). By its motion for new trial, Fan Fare contends that (i) its objection to the court's instruction on agency was timely and in compliance with the strict requirements of Rule 51, (ii) the basis for the objection had been made clear to the court and further objection would have been futile, and (iii) the error in the instruction was so fundamental and plain as to create a miscarriage of justice.

Undoubtedly, "[i]f . . . the jury is later given additional instructions or the instructions are reread to the jury and it appears that the instructions then given or repeated are erroneous, objection may be made at that time and it is the court's duty to correct the error." 9 Wright & Miller, Federal Practice and Procedure § 2553 at 642 (1971) (footnotes omitted). *See also* 5A Moore's Federal Practice ¶ 51.04 at 51–26, 27 (1982). As observed in *Palmer v. Miller,* 145 F.2d 926, 930 (8th Cir.1944), "[w]here, after the submission of a case to a jury, the jury is given additional instructions or the court has the instructions which were given read to the jury, the case, in a practical sense, is not finally submitted to the jury until that time." If the issue before the court in the present case were simply whether an erroneous jury instruction was given—an example in this case being a contention that the court incorrectly defined agency—then the above, well established principle of law, relied upon by Fan Fare, would be relevant. *See, e.g., id.* However, this issue is not the one before the court. Rather, as explained below, the issue in this case is one of "trial strategy" and, as a result, the issue involves trial concerns different from those described above.

Selecting legitimate theories of recovery or defense to present to a jury at the close of all the evidence is obviously a question of trial strategy for the lawyers. For example, at the end of the evidentiary part of the trial, a lawyer might abandon what he or she perceives to be the weaker of the theories of recovery or defense in order to present a stronger front; or, as was admittedly done by Fan Fare's counsel, a lawyer might present fewer theories of recovery or defense so as not to confuse the jury.[10] Any request by a jury, after beginning its deliberation, for additional instructions or rereading of instructions would more than likely be some indication of what the jury considered critical in the case. If a court, faced with such a request from the jury, were to accede to a party's request to present an additional, previously abandoned theory to the jury, the court would in effect be, first, allowing the requesting party in the midst of jury deliberations to retailor its trial strategy to meet the perceived concerns of the jury and, second, allowing a new theory to go to the jury without having first afforded the other party an opportunity to address the merit or lack thereof in the theory.[11] Such a result would unduly advantage the requesting party and prejudice the other party. For the above reasons, this court concludes that if, after the

---

10. *See* note 4, *supra.*

11. While reargument to the jury is available in certain instances to alleviate these problems, reargument may be inappropriate when its effect would be to give further advantage to a party who should have made his objection known at an earlier point. *Trawick v. Manhattan Life Ins. Co.,* 484 F.2d 535, 538–41 (5th Cir.1973); *see Estate of Lutren v. Chesapeake & Ohio R.R.,* 592 F.2d 941, 946 (6th Cir.1979). Moreover, reargument should generally be a remedy limited to supplemental closing argument before the jury retires to deliberate, *see Trawick v. Manhattan Life Ins. Co., supra,* and would appear to create more problems than it would solve if made available to the parties upon reinstruction to the jury.

**760**

submission of a case to a jury, the jury is given additional instructions or previous instructions are reread to the jury, a party is not entitled to have the court instruct the jury on an additional, previously abandoned theory.

■ In the instant case, Fan Fare contends, first, that its objection to the court's instruction on agency was in compliance with the strict time requirements of Rule 51. This contention is meritless. Fan Fare's objection was based on the failure of the court to give a jury instruction on a previously abandoned theory of direct liability. The objection came as a result of a jury request for reinstruction on agency, but after the jury had begun its deliberations. As already observed, a court, upon reinstructing a jury after it begins its deliberations, is not obligated to instruct the jury on a party's additional, previously abandoned theory.

■ Fan Fare's second and third contentions—that the basis for the objection had been made clear to the court and further objection would have been futile and that the error in the instruction was so fundamental and plain as to create a miscarriage of justice—are also unavailing. The record and the evidence firmly establish that Fan Fare, for trial strategy reasons, decided to travel exclusively on the theory of agency and to abandon the theory of direct liability. Furthermore, the theory of agency was not an incorrect basis for liability and, thus, was not an erroneous instruction to the jury; rather, it was an alternative basis for liability under the evidence.

Accordingly, for the above reasons, it is ORDERED that the plaintiff Fan Fare's October 28, 1982, motion for new trial be and it is hereby denied.