STATE of Wisconsin, Plaintiff-Appellant,

v.

Rowland L. HARP, Defendant-Respondent.

Court of Appeals

*No. 87–0212–CR. Submitted on briefs November 7, 1988.—*
*Decided May 11, 1989.*

(Also reported in 443 N.W.2d 38.)

For the plaintiff-appellant the cause was submitted on the briefs of *Donald J. Hanaway,* attorney general, and *Daniel J. O'Brien,* assistant attorney general.

For the defendant-respondent the cause was submitted on the briefs of *Glenn L. Cushing,* assistant state public defender.

Before Gartzke, P.J., Dykman and Sundby, JJ.

GARTZKE, P.J.   The state appeals from an order granting defendant Rowland Harp a new trial. Defendant was charged with first-degree murder, sec. 940.01, Stats. 1985–86,[1] in the stabbing death of Rodney Michaels. Defendant claimed he acted in self-defense. The jury found him guilty of second-degree murder, sec. 940.02(1), Stats. The court granted a new trial because of unobjected-to instructional errors.

The state contends that the trial court abused its discretion. The state argues that defendant waived the claimed errors, the instructions were sufficient, and if they were not, the errors were harmless. Defendant contends that the instructions violated his constitutional rights to trial by jury and to present a defense, the errors were not harmless, the fundamental nature of the errors warrants a new trial notwithstanding his failure to object, and in any event the court of appeals should grant a new trial under sec. 752.35, Stats.

1.   *Summary of Holdings and Disposition*

We hold that by failing to object to the instructional error, defendant waived the right to review of the claimed errors. Sec. 805.13(3), Stats. Because the common-law exceptions to the waiver rule no longer exist,

---

[1] References are to the 1985–86 statutes, unless otherwise noted.

*State v. Schumacher,* 144 Wis. 2d 388, 402, 424 N.W.2d 672, 677 (1988), the trial court erred if it relied on those exceptions to review the claimed errors and to order a new trial on the basis of errors disclosed by such a review. The trial court possesses a statutory power, however, to order a new trial in the interest of justice. Sec. 805.15(1). It may exercise that power if it correctly concludes that instructional error, even though unobjected-to, had occurred and the error was such as to justify the court's ordering a new trial in the interest of justice.

The trial court may have intended to order a new trial in the interest of justice. We therefore review the court's conclusion that instructional error occurred. We confine our analysis to the court's reasoning, since we may not otherwise review unobjected-to instructional errors.

We agree with the trial court's reasons for concluding that the instructions were erroneous. First, the instructions failed to advise the jury that it could not convict defendant of either first-degree or second-degree murder if it also found the elements of manslaughter/imperfect self-defense existed, in which event it should have found defendant guilty of manslaughter. The second error was the failure to instruct the jury that before it could find defendant guilty of first-degree or second-degree murder, the state had to show that defendant did not actually believe the force he used was necessary in self-defense and that therefore his act did not constitute either perfect self-defense or manslaughter/imperfect self-defense.

We reverse and remand for the trial court to clarify whether it intended to order a new trial in the interest of justice under sec. 805.15(1), Stats., and, if so, to state its reasons. If that was the court's intent, it should order a

new trial. If not, the judgment of conviction and sentence stand unaffected.

### 2. *History of the Case*

Defendant admits he stabbed Michaels. He claims he and Michaels had a sexual encounter in an adult book store in Madison during the early hours of October 18, 1984, during which Michaels picked his pocket, taking defendant's wallet and one of the two knives defendant was carrying. Michaels left the store, defendant followed him, and they walked to an alley where defendant demanded his property. Michaels threatened him with the knife. Defendant stabbed Michaels in self-defense. Michaels died from his wound.

The trial court instructed the jury on first-degree and second-degree murder, self-defense and manslaughter/imperfect self-defense. The jury found defendant guilty of second-degree murder, and he was convicted and sentenced.

Defendant filed a postconviction motion for a new trial under sec. 974.02, Stats., and sec. [Rule] 809.30, Stats. Defendant's motion asserted that the jury instructions were constitutionally defective in three respects. None of the defects were raised by objection during the instruction conference.

Defendant contended that the instructions relieved the state of its burden of proof because they did not advise the jury that the state must prove beyond a reasonable doubt that defendant did not actually believe his use of force was necessary in self-defense before the jury could convict him of either first-degree or second-degree murder. Second, the "bridging" or transitional instruction between second-degree murder and manslaughter prevented the jury from considering the lesser-included

crime of manslaughter/imperfect self-defense.[2] Third, the manslaughter/imperfect self-defense instruction improperly stated the burden of proof by requiring the jury to *find* that defendant acted believing his use of force was necessary, rather than requiring the state to *disprove* this fact beyond a reasonable doubt.

The trial court agreed with defendant's first two contentions and ordered a new trial. The court did not reach the third contention, nor did it consider the constitutional argument.

### 3. *Statutes Involved*

Before discussing the trial court's reasoning, we briefly review the pertinent crimes, the self-defense privilege, and the jury instructions. First-degree murder is causing the death of another with intent to kill. Sec. 940.01(1), Stats. Second-degree murder, to the extent relevant, is causing the death of another by conduct imminently dangerous to another and evincing a depraved mind, regardless of life. Sec. 940.02(1).

The self-defense privilege is statutory. A person is privileged to use force to prevent what he or she reasonably believes is an unlawful interference with his or her person. A person may

> intentionally use only such force or threat thereof as [the person] reasonably believes is necessary to prevent or terminate the interference. [A person] may not intentionally use force which is intended or likely

[2]When, as here, the jury is instructed on a charged crime and its lesser-included offenses, a "bridging" or transitional instruction explains the sequence in which the jury should consider the offenses.

to cause death or great bodily harm unless [the person] reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself [or herself].

Sec. 939.48(1), Stats. We refer to the proper exercise of the self-defense privilege as "perfect" self-defense. Perfect self-defense is an absolute defense to murder. Sec. 939.45.

So far as is material to this appeal, "imperfect" self-defense resulting in the death of another is the felony of causing a death "unnecessarily, in the exercise of [a person's] privilege of self-defense." Sec. 940.05(2), Stats. This crime has three elements: (1) the statutory elements of either first-degree or second-degree murder are present; (2) the defendant's act was not privileged under the law of self-defense; and (3) while the defendant believed the force used was necessary in self-defense, the defendant's belief was unreasonable because (a) a reasonable person would not have believed, under the circumstances, that he or she was privileged at all to use force or (b) a reasonable person would not have used that degree of force. *State v. Kelley*, 107 Wis. 2d 540, 547, 319 N.W.2d 869, 873 (1982); *Mitchell v. State*, 47 Wis. 2d 695, 702, 177 N.W.2d 833, 837 (1970). We refer to this crime as "manslaughter/imperfect self-defense." We do so only for convenience, since sec. 940.05(2) does not contain the word "manslaughter" or the term "imperfect self-defense."[3]

---

[3]Section 940.05, Stats., is entitled "manslaughter," but a title is not part of the statute. Sec. 990.001(6), Stats.

When first-degree murder is charged, it includes the lesser crimes of second-degree murder and manslaughter/imperfect self-defense. Sec. 939.66(2), Stats.

### 4. *Jury Instructions*

The trial court instructed the jury that if it was satisfied beyond a reasonable doubt that defendant intended to kill Michaels and his conduct was not privileged under the law of self-defense, it should find him guilty of first-degree murder. A bridging instruction from first-degree to second-degree murder was given.

After setting out the elements of second-degree murder, the instruction continued:

> If you are satisfied beyond a reasonable doubt from the evidence in this case that the defendant killed Rod J. Michaels, Jr., by conduct imminently dangerous to another and evincing a depraved mind, regardless of human life, *and that the conduct of the defendant was not privileged under the law of self-defense as defined later in these instructions, then you should find the defendant guilty of murder in the second-degree.* [Emphasis added.]

The above instruction was immediately followed by this bridging instruction:

> If you are not so satisfied, you must not find the defendant guilty of second-degree murder, and you should consider whether the defendant is guilty of manslaughter, in violation of sec. 940.05 of the Wisconsin statutes, which is a lesser included offense of first- and second-degree murder. *You should make every reasonable effort to agree that the defendant is not guilty of first- or second-degree murder before considering the offense of manslaughter.* However, if

870

after full and complete consideration of the evidence, you conclude that further deliberation would not result in unanimous agreement on the offenses of first- or second-degree murder, you should consider whether the defendant is guilty of manslaughter. [Emphasis added.]

The jury was next instructed on the privilege of perfect self-defense, concluding with the following:

[B]efore you can find the defendant guilty of any of the offenses submitted, you must be satisfied beyond a reasonable doubt from the evidence in this case the use of force by him against Rod J. Michaels, Jr., if such force was used, was not privileged under the law of self-defense as it has been defined for you.

The jury was then instructed on the elements of manslaughter/imperfect self-defense.

The jury was also instructed that "[t]he burden of establishing every fact necessary to constitute guilt is upon the state. Before you can return a verdict of guilty, the evidence must satisfy you beyond a reasonable doubt that the defendant is guilty." The balance of the instruction elaborated upon the meaning of "reasonable doubt."

### 5. *Trial Court's Reasoning*

We turn to the trial court's decision that the jury instructions were defective. Because intent to kill is an element of first-degree murder but not of second-degree murder, *State v. Lee,* 108 Wis. 2d 1, 13, 321 N.W.2d 108, 114 (1982), the trial court inferred from the guilty verdict on second-degree murder that the jury found defendant had not intended to kill Michaels and that he was not entitled to the perfect self-defense privilege.

The court noted that the jury could have found the perfect self-defense privilege inapplicable for one of two reasons. First, the jury could have found that defendant had no actual belief that he had to defend himself. Second, the jury could have found that defendant believed he had to defend himself but that his belief or the amount of force used was unreasonable. If the jury relied on the second reason, its findings fit the definition of manslaughter/imperfect self-defense, and the jury should have found him guilty of that crime.

The second-degree murder instruction did not tell the jury that if the defendant believed he had to defend himself, but his belief or the amount of force used was unreasonable, it should convict defendant of manslaughter/imperfect self-defense rather than second-degree murder. It is true that the manslaughter/imperfect self-defense instruction was read to the jury and available to it in writing. However, if the jury followed the instructions literally, the bridging instruction after second-degree murder would have led it to end deliberations without considering whether defendant was guilty of manslaughter/imperfect self-defense. Nor was the jury instructed that the state had to prove beyond a reasonable doubt that defendant's act was not perfect self-defense or manslaughter/imperfect self-defense before he could be convicted of first-degree or second-degree murder. The court therefore concluded that the instructions it gave to the jury were erroneous.

The trial court believed it could grant a new trial because of these errors, even though the defendant had not objected to the instructions. The court noted that although failure to object generally waives the right to complain of instructional error, exceptions to the waiver rule exist. The court described the exceptions as "plain error and where an injustice has been done" and error

pertaining to a "substantive issue." It concluded that the instructional errors came within these exceptions. It also concluded the errors were not harmless because the court could not be sure that they did not influence the jury. The court therefore ordered a new trial.

### 6. Trial Court's Competency to Review Unobjected-to Instructional Errors

#### A. Scope of Review

Our review of the trial court's decision to grant a new trial is limited. Whether to grant a new trial in a criminal case is within the trial court's discretion. *State v. Wyss,* 124 Wis. 2d 681, 717, 370 N.W.2d 745, 762 (1985). We examine a trial court's discretionary decision for abuse. Discretion is not abused if the court employed a logical rationale based on appropriate legal principles and facts of record. *Prahl v. Brosamle,* 142 Wis. 2d 658, 667, 420 N.W.2d 372, 376 (Ct. App. 1987). Discretion is abused when based on a mistake of law. *State v. Hutnik,* 39 Wis. 2d 754, 763, 159 N.W.2d 733, 737 (1968).

The state asserts that it was an error of law for the trial court even to consider the instructional defects defendant raised for the first time in his postconviction motion. It relies on sec. 805.13(3), Stats., as interpreted in *Schumacher,* which was decided while this appeal was pending.

#### B. Waiver Rule as Applied by Schumacher Court

Section 805.13(3), Stats., provides that at the close of the evidence and before arguments to the jury, the trial court must conduct a conference with counsel. At

the conference the court must inform counsel of the instructions and verdict the court proposes to submit to the jury. The statute continues, "[c]ounsel may object to the proposed instructions or verdict on the grounds of incompleteness or other error, stating the grounds for objection with particularity on the record. *Failure to object at the conference constitutes a waiver of any error in the proposed instructions or verdict.*" *Id.* (emphasis added).

The *Schumacher* court dealt with two aspects of the waiver rule in sec. 805.13(3), Stats. The first is the effect of the waiver rule in sec. 805.13(3) on common-law exceptions to the common-law waiver rule in appellate practice. The second is the power of the court of appeals to review unobjected-to error in the instructions or verdict.

The *Schumacher* court held that the waiver rule in sec. 805.13(3), Stats., supersedes the common-law exceptions to the rule that a party cannot raise on appeal unobjected-to errors in the jury instructions. 144 Wis. 2d at 402, 424 N.W.2d at 677. Section 805.13 is a rule adopted by the Wisconsin Supreme Court, effective January 1, 1976. Wis. R. Civ. P., 67 Wis. 2d 585, 703–04 (1975).

The *Schumacher* court noted that before 1976, several judicially-created exceptions allowed discretionary review by the Wisconsin Supreme Court of unobjected-to errors in the instructions. 144 Wis. 2d at 398–99, 424 N.W.2d at 676. The court briefly described each exception: the misstatement of law or "form-substance" exception, the "plain error" exception, and the "compelling circumstances" or "integrity of the factfinding process" exception. *Id.* at 401–04, 424 N.W.2d at 677–78. The court noted that after 1976, it held in a series of cases that these common-law exceptions were super-

seded by sec. 805.13(3), Stats., except for the "integrity of the factfinding process" rule. *Id.* at 402, 407, 424 N.W.2d at 677, 679. The court had developed the "integrity of the factfinding process" exception after the effective date of sec. 805.13(3).[4] *Id.* at 403–04, 424 N.W.2d 677–78.

After discussing its functions of defining, developing and declaring the law, the court concluded, "the 'integrity of the factfinding process test' . . . is a valid exception to the waiver rule which this court [i.e., Wisconsin Supreme Court] can use in the proper situation." *Id.* at 407, 424 N.W.2d at 679 (emphasis added). The court concluded that because the court of appeals is primarily an error-correcting court, it lacks "the power to find that unobjected-to errors go to the integrity of the factfinding process." *Id.* at 409, 424 N.W.2d at 680.

As the *Schumacher* court explained and emphasized, however, sec. 805.13(3), Stats., has no effect on the power of the court of appeals to reverse under sec. 752.35, Stats., a power the *Schumacher* court described as "[a] discretionary power of reversal (as opposed to a discretionary power of review)." *Id.* at 408, 424 N.W.2d at 680. The court of appeals retains its statutory power under sec. 752.35, to reverse in its discretion for unobjected-to errors "if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried."[5]

---

[4]That development occurred in *State v. Baldwin,* 101 Wis. 2d 441, 446, 304 N.W.2d 742, 746 (1981), *State v. Gustafson,* 119 Wis. 2d 676, 693, 350 N.W.2d 653, 662 (1984), *State v. Zelenka,* 130 Wis. 2d 34, 44, 387 N.W.2d 55, 59 (1986), and *State v. Shah,* 134 Wis. 2d 246, 254, 397 N.W.2d 492, 496 (1986).

[5]The supreme court noted that failure to object to error in the instructions does not preclude review of issues which are by law "unwaivable" or which concern ineffective-assistance-of-

## C. *Effect of Waiver Rule on Trial Court's Competency*

The effect of the new waiver rule in sec. 805.13(3), Stats., on the competency of a trial court to grant a new trial was not before the *Schumacher* court. The implications of sec. 805.13(3), as interpreted by the *Schumacher* court, nevertheless convince us that after the jury has been discharged, a trial court may not use a common-law exception to the waiver rule to review an unobjected-to error in the jury instructions. For that reason, the trial court may not reverse and order a new trial solely on the basis of "plain error" in the instructions to which no objection was made. A trial court may exercise its power of discretionary reversal in the interest of justice under sec. 805.15(1), if instructional error occurred, whether or not the error was objected to.

We begin with the 1976 waiver rule and *Schumacher,* the keystone decision declaring its effect. Nothing in sec. 805.13(3), Stats., recognizes any exception whatever to the waiver rule.[6] And nothing in *Schu-*

---

counsel claims. *Schumacher,* 144 Wis. 2d at 408 n. 14, 424 N.W.2d at 680.

[6]The federal analogue to sec. 805.13(3), Stats., Fed. R. Civ. P. 51, provides that "no party may assign as error the giving or the failure to give an instruction unless [the party] objects thereto before the jury retires to consider its verdict." Except for the Ninth Circuit, federal appellate courts honor exceptions to this waiver rule and review such error when the case involves "plain" or "fundamental" error, or a "miscarriage of justice" would otherwise result. *See Almonte v. Nat. Union Fire Ins. Co.,* 787 F.2d 763, 767–69 (1st Cir. 1986); *Frederic P. Wiedersum Assoc. v. Nat. Homes Constr. Corp.,* 540 F.2d 62, 66 (2d Cir. 1976); *Bowley v. Stotler & Co.,* 751 F.2d 641, 647 (3d Cir. 1985); *Management Sys. Assoc. v. McDonnell Douglas Corp.,* 762 F.2d 1161, 1177 (4th Cir.

*macher* suggests that the common-law exceptions to the waiver rule were superseded only for purposes of appellate review and not as to the trial courts.

On the contrary, the continued availability at the trial court level of the common-law exceptions to the waiver rule is inconsistent with the new rule announced in sec. 805.13(3), Stats., when the jury has been excused. The *Schumacher* court said:

1985); *Murphy v. Owens-Illinois, Inc.,* 779 F.2d 340, 346 (6th Cir. 1985); *Exxon Corp. v. Exxene Corp.,* 696 F.2d 544, 549 (7th Cir. 1982); *Beckman v. Mayo Found.,* 804 F.2d 435, 438 (8th Cir. 1986); *Lusby v. T.G. & Y. Stores, Inc.,* 796 F.2d 1307, 1311 (10th Cir.) *cert. denied,* 479 U.S. 884 (1986); *Pate v. Seaboard R.R. Inc.,* 819 F.2d 1074, 1082 (11th Cir. 1987). The Ninth Circuit decision to the contrary is *Pierce Packing Co. v. John Morrell & Co.,* 633 F.2d 1362, 1365 (9th Cir. 1980).

At least two federal district courts have applied these exceptions in granting new trials. *See Childs v. Franco,* 563 F. Supp. 290, 293 (E.D. Pa. 1983) (district court granted new trial because of fundamental error in unobjected-to jury instructions, because appellate standards were applicable when trial court reviewed its own instructions on postverdict motion); and *Korotki v. Goughan,* 597 F. Supp. 1365, 1378 (D.C. Md. 1984) (district court granted postverdict motion because of error in unobjected-to jury instructions because a miscarriage of justice would otherwise result). Other federal district courts have applied the exceptions to waiver of unobjected-to instructional errors but concluded that the facts did not fall within any exception. *See Ortega v. City of Kansas City, Kansas,* 659 F. Supp. 1201, 1215 (D. Kan. 1987); *Fan Fare, Inc. v. Fourdel Industries, Ltd.,* 563 F. Supp. 754, 758–60 (M.D. Ala. N.D.) aff'd 732 F.2d 943 (11th Cir. 1984); *Jacobson v. Pittmann-Moore, Inc.,* 582 F. Supp. 169, 178 (D. Minn. 1984) *opinion after remand,* 624 F. Supp. 937 (1985), *aff'd* 786 F.2d 1172 (8th Cir. 1986); *Redmond v. Baxley,* 475 F. Supp. 1111, 1115 (E.D. Mich. 1979); and *Marder v. Conwed Corp.,* 75 F.R.D. 48, 68 (E.D. Pa. 1977).

> [W]e explained in *Air Wisconsin [Inc. v. North Cent. Airlines, Inc.,* 98 Wis. 2d 301, 311, 296 N.W.2d 749, 753 (1980)] that the purpose of a waiver rule [as provided in sec. 805.13(3)] for unobjected-to instructions was to assure that counsel would bring these errors to the attention of the trial court, when that court could easily remedy the deficiency.

144 Wis. 2d at 409, 424 N.W.2d at 680.

Defendant's jury was excused before the claimed errors in the instructions were called to the trial court's attention. At that point, it was impossible for the court to correct its instructional errors (if it is fair to so describe unobjected-to error) except by calling a new jury, and that, of course, would have required a new trial. To read sec. 805.13(3), Stats., to permit the trial court to review the claimed errors after the jury has been excused would, as the *Schumacher* court said regarding review by the court of appeals, "amount to a repudiation of the idea underlying sec. 805.13(3)." *Id.* at 409, 424 N.W.2d at 680.

Accordingly, we conclude that sec. 805.13(3), Stats., as explained and applied by the *Schumacher* court, supersedes all common-law exceptions under which a trial court may review unobjected-to errors in the instructions. After the jury has been excused, trial courts are no longer competent to order a new trial solely because of unobjected-to instructional errors. Because the trial court ordered a new trial after a review based at least in part on common-law exceptions to the waiver rule, the court committed an error of law and therefore abused its discretion. *Hutnik,* 39 Wis. 2d at 763, 159 N.W.2d at 737.

However, trial courts possess a statutory power to order a new trial in the interest of justice. Section 805.15(1), Stats., provides in part:

> A party may move to set aside a verdict and for a new trial because of errors in the trial, or because the verdict is contrary to law or to the weight of the evidence, or because of excessive or inadequate damages, or because of newly-discovered evidence, *or in the interest of justice.* [Emphasis added.]

The discretionary power of trial courts to order a new trial in the interest of justice has existed since 1925, when the legislature amended sec. 270.49, Stats. 1925, the predecessor to sec. 805.15, Stats. Ch. 286, sec. 1, Laws of 1925. Its application in criminal cases has received the implied approval of the Wisconsin Supreme Court. In *State v. La Fernier,* 37 Wis. 2d 365, 371, 155 N.W.2d 93, 96 (1967), an appeal from a criminal conviction, the court referred to sec. 270.49(1), Stats. 1963, as conferring a discretionary power to grant a new trial in the interest of justice. As late as 1983, the Wisconsin Supreme Court recognized in another criminal case that "[w]here a trial court grants a motion for a new trial in the interest of justice, an appellate court should only reverse if the trial court abused its discretion." *State v. McConnohie,* 113 Wis. 2d 362, 368, 334 N.W.2d 903, 906 (1983). We therefore take it as established that a trial court may order a new trial in a criminal case in the interest of justice under sec. 805.15(1).

Nothing in sec. 805.15(1), Stats., suggests that the power to grant a new trial in the interest of justice is impeded by a defendant's failure to object. The statutory power to do so is unaffected by the waiver rule of sec. 805.13(3). Like secs. 751.06 and 752.35, Stats., sec. 805.15(1) is a statutory exception to the waiver rule to

the extent its terms are applicable. *Cf. Schumacher,* 144 Wis. 2d at 401, 424 N.W.2d at 677 (secs. 751.06 and 752.35 are statutory exceptions to the waiver rule). Section 805.15(1) does not preserve any of the common-law exceptions abolished by sec. 805.13(3).

Consequently, we conclude that a trial court may determine whether unobjected-to errors occurred in the jury instructions, if the court does so as the first of two steps before deciding whether to grant a new trial in the interest of justice. The second step is a connecting rationale between the error and the decision whether to grant the new trial.

### 7. *New Trial in Interest of Justice*

We are uncertain whether the trial court intended to order a new trial in the interest of justice, pursuant to sec. 805.15(1), Stats. The court said exceptions to the waiver rule include "plain error and where an injustice has been done," and error pertaining to a "substantive issue." The court may have meant to order a new trial because the perceived errors provided the basis for an unexplained rationale justifying a new trial in the interest of justice.

Under these circumstances, we first review the trial court's conclusion that the instructions were indeed erroneous. Although *Schumacher* prohibits us from reviewing error in unobjected-to instructions, 144 Wis. 2d at 416, 424 N.W.2d at 683, it does not affect our power to review a trial court's exercise of its discretion as authorized by statute. If the instructions were correct, then the trial court's decision was based on a mistake of law and was an abuse of the court's discretion. *Hutnik,* 39 Wis. 2d at 763, 159 N.W.2d at 737. Because we agree, however, that the instructions were erroneous, we

880

remand this matter for the trial court to clarify whether it intended to exercise its statutory power to order a new trial in the interest of justice, sec. 805.15(1), Stats., and if so, to state its rationale for its decision to grant or deny a new trial.

A. *Improper to Convict of First-Degree or Second-Degree Murder Before Considering Whether Facts Constituted Manslaughter/Imperfect Self-Defense*

The elements of manslaughter/imperfect self-defense bear repetition: (1) all elements of first or second-degree murder must be present; (2) the defendant's act was not privileged under the law of self-defense; and (3) while the defendant believed the force used was necessary in self-defense, the defendant's belief was unreasonable because (a) a reasonable person would not have believed, under the circumstances, that he or she was privileged at all to use force or (b) a reasonable person would not have used that degree of force. *Kelley,* 107 Wis. 2d at 547, 319 N.W.2d at 873; *Mitchell,* 47 Wis. 2d at 702, 177 N.W.2d at 837.

Because the jury found defendant guilty of second-degree murder, we infer that the state established the existence of the first two elements of manslaughter/imperfect self-defense. The jury was instructed to convict defendant of second-degree murder only if it was satisfied beyond a reasonable doubt that "the defendant killed Rod J. Michaels, Jr., by conduct imminently dangerous to another and evincing a depraved mind, regardless of human life, *and* that the conduct of the defendant was not privileged under the law of self-defense" (emphasis added).

However, as the trial court noted, it is impossible to determine why the jury found that defendant's act was not privileged under the law of self-defense. We repeat: the privilege does not apply if (1) defendant did not actually believe that he had to use force in self-defense or (2) defendant believed that he had to use force in self-defense but his belief or the amount of force used was unreasonable. A defendant who actually believed that it was necessary to use force in self-defense but whose belief or amount of force used was unreasonable is guilty of manslaughter/imperfect self-defense. *State v. Gomaz,* 141 Wis. 2d 302, 310, 414 N.W.2d 626, 630 (1987); sec. 940.05(2), Stats.

If the jury found that the self-defense privilege did not apply because defendant believed he had to use force to defend himself, but his belief or the amount of force used was unreasonable, then all three elements of manslaughter were present. Under those circumstances, the jury should have found him guilty of manslaughter/ imperfect self-defense. The instruction did not completely and correctly state the law, since nothing in the second-degree murder instruction informed the jury that defendant must not be convicted of second-degree murder if, due to his unreasonable belief or amount of force used, the self-defense privilege did not apply.

Our analysis deals with second-degree murder because the jury acquitted defendant of first-degree murder. The same analysis would apply had the jury found him guilty of first-degree murder, since the instruction on first-degree murder suffered from the same omission. *Compare* Wis J I—Criminal 1141 (1985) (First Degree Murder: Self-Defense Manslaughter), which correctly instructs the jury that it must find the defendant did not actually believe the force used was necessary in self-

defense before it may convict the defendant of first-degree murder.

## B. *Improper Statement of Burden of Proof*

Perfect self-defense is an absolute defense to murder. Sec. 939.45, Stats. Excessive self-defense is not an absolute defense but it affects the nature of the crime of murder. The legislature recognized that fact by creating the crime of manslaughter/imperfect self-defense. The existence of a belief that one must use force to defend oneself, if the belief or amount of force used was unreasonable, mitigates the crimes of first-degree and second-degree murder to the less severely punished crime of manslaughter/imperfect self-defense.

A circumstance which mitigates punishment for a crime may be characterized as an affirmative defense. *State v. Olson,* 106 Wis. 2d 572, 582, 317 N.W.2d 448, 453 (1982). Accordingly, it is fair to characterize the crime of manslaughter/imperfect self-defense as an affirmative defense to the crimes of first-degree and second-degree murder.[7]

This is not to suggest that every lesser-included offense is an affirmative defense to a greater offense. Unlike other lesser-included offenses, a finding that the elements of manslaughter/imperfect self-defense exist is compatible with a finding of all of the elements of the

---

[7]This principle is now expressly recognized in the criminal code. Under the current statutes, the fact that an actor believed that he or she was in imminent danger of death or great bodily harm and that the force used was necessary to defend himself or herself, and either belief was unreasonable is an affirmative defense which mitigates first-degree intentional homicide to second-degree intentional homicide. Secs. 940.01(2)(b) and 940.05(1), Stats. 1987–88.

greater offense of first-degree or second-degree murder. Moreover, other lesser-included offenses do not contain the mitigating circumstances inherent in manslaughter/ imperfect self-defense.

In Wisconsin, if a defendant introduces evidence to establish a statutory affirmative defense to criminal liability, the state must disprove that defense beyond a reasonable doubt. *Moes v. State,* 91 Wis. 2d 756, 764–65, 284 N.W.2d 66, 70 (1979).[8] But an affirmative defense need not be expressly denominated as such by statute. *Olson,* 106 Wis. 2d at 590 n. 8, 317 N.W.2d at 457. We are free to hold, as we do, that manslaughter/imperfect self-defense is an affirmative defense to charges of first-degree or second-degree murder, even though it is not among the several defenses to criminal liability the legislature established in secs. 939.42 through 939.48, Stats.

The trial court submitted a self-defense instruction to the jury. For that very reason, defendant was entitled to and received instruction on the lesser-included offense of manslaughter/imperfect self-defense. *Gomaz,* 141 Wis. 2d at 309–10, 414 N.W.2d at 630. As we have said, manslaughter/imperfect self-defense is an affirmative defense. The state therefore had the burden of disproving the existence of both defenses—perfect self-defense and manslaughter/imperfect self-defense—beyond a reasonable doubt to obtain a conviction for first-degree or second-degree murder. *Moes,* 91 Wis. 2d at 764–65, 284 N.W.2d at 70. The instructions erred by informing the

---

[8]The requirement that the state disprove an affirmative defense beyond a reasonable doubt is statutory. It is not based on the United States Constitution or the Wisconsin Constitution. *State v. Nicholson,* 148 Wis. 2d 353, 367, 435 N.W.2d 298, 304 (Ct. App. 1988).

jury only that the state had to disprove perfect self-defense.

To secure a conviction on first-degree or second-degree murder when perfect self-defense and manslaughter/imperfect self-defense are submitted to the jury, the state must prove beyond a reasonable doubt (1) the existence of the statutory elements of first-degree or second-degree murder; and (2) that when the defendant caused the victim's death, the defendant did not actually believe that the force used was necessary in self-defense. The lack of that actual belief disproves both affirmative defenses. It is impossible to act in perfect self-defense without actually believing that the force used is necessary for self-defense. It is also impossible to satisfy the elements of manslaughter/imperfect self-defense without having that actual belief. Under these circumstances, the jury should find the defendant guilty of first-degree or second-degree murder, and the jury should be so instructed.

If the jury finds that the state proved the existence of the statutory elements of either first-degree or second-degree murder, but that the state failed to prove that the defendant lacked an actual belief that the force used was necessary in self-defense, then the state has failed to disprove not only perfect self-defense but also manslaughter/imperfect self-defense, and the jury should be so instructed. The jury should be instructed that under these circumstances, the defendant must be acquitted of first-degree or second-degree murder. If the defendant's actual belief was reasonable, then defendant acted in perfect self-defense and must be acquitted of first-degree or second-degree murder. If defendant's actual belief was unreasonable, then the defense of manslaughter/imperfect self-defense has been established, and defendant

must be acquitted of first-degree or second-degree murder.

If the jury has acquitted the defendant of first-degree or second-degree murder because the state failed to prove the defendant lacked an actual belief that the force used was necessary for self-defense, then manslaughter/imperfect self-defense, as an affirmative defense, drops out of the case. The jury must next consider whether to find the defendant guilty of the crime of manslaughter/imperfect self-defense. For the jury to find the defendant guilty of the crime of manslaughter/imperfect self-defense, the state must prove that the defendant did not *reasonably* believe the force used was necessary in self-defense, either because the defendant's belief was unreasonable or because the defendant used an unreasonable degree of force. If the state fails to prove that the defendant did not reasonably believe the force used was necessary, then the defendant must be acquitted of manslaughter/imperfect self-defense. If the state proves that defendant did not reasonably believe the force used was necessary, then the jury should find the defendant guilty of the crime of manslaughter/imperfect self-defense, and the jury should be so instructed.

Having concluded that the instructional errors relied on by the trial court exist, we reverse and remand for a clarification of the court's decision. If the trial court intended to exercise its discretion under sec. 805.15(1), Stats., it should explain why the instructional errors require a new trial in the interest of justice. The court must enunciate the reason, beyond the fact of error itself, why the error requires a new trial in the interest of justice. For example, the trial court could consider whether it is probable that justice had miscarried or that

the real controversy had not been fully tried.[9] If it intended only to order a new trial, pursuant to the former common-law exceptions to the waiver rule, it should not order a new trial.

## 8. *Harmless Error*

The state asserts that the errors in the instructions were harmless, because the instructions taken as a whole were correct, and because the evidence did not support either an instruction or verdict on manslaughter/imperfect self-defense. The state contends that the trial court therefore should not have granted a new trial.

### A. *Jury Instructions as Whole*

The state argues that the errors were harmless if one views the jury instructions as a whole. It is undisputed that the jury was read the manslaughter/imperfect self-defense instruction and had the instruction available to it in writing.

We consider jury instructions as a whole. *State v. Ivy,* 119 Wis. 2d 591, 603, 350 N.W.2d 622, 628 (1984). The test of prejudice is whether it is probable that the jury was misled by the erroneous instruction. *Westfall v. Kottke,* 110 Wis. 2d 86, 107, 328 N.W.2d 481, 492 (1983). The instructions, even taken as a whole, probably misled the jury by not indicating that a finding of the elements of manslaughter excluded a conviction for second-degree

---

[9]*Compare Wyss,* 124 Wis. 2d at 733, 370 N.W.2d at 770 (to exercise its discretionary powers under sec. 752.35, Stats. by ordering new trial because it is probable that justice has miscarried, court of appeals must be satisfied that new trial probably will have different result).

murder. Although the manslaughter/imperfect self-defense instruction correctly stated the elements of that crime, it did not state that if the jury found those elements existed it could convict defendant only of manslaughter/imperfect self-defense.

### B. *Evidence Supporting Jury Instruction or Verdict*

Although the state argues that the evidence did not support either a jury instruction or verdict on manslaughter/imperfect self-defense, it failed to object when the trial court proposed to instruct the jury on perfect self-defense and on manslaughter/imperfect self-defense. Accordingly, the state has waived the right to argue that the manslaughter/imperfect self-defense instruction was not supported by the evidence. *State v. Holt,* 128 Wis. 2d 110, 125, 382 N.W.2d 679, 687 (Ct. App. 1985). We may not review an instructional error that was not objected to at trial. *Schumacher,* 144 Wis. 2d at 416, 424 N.W.2d at 683.

Whether the evidence would support a conviction for manslaughter/imperfect self-defense is another matter. If it would not, the instructional errors described by the trial court were harmless. If an error is harmless, a trial court abuses its discretion in granting a new trial. *State v. Clark,* 87 Wis. 2d 804, 818, 275 N.W.2d 715, 722 (1979).

Error is harmless if a reviewing court can be sure that there is no reasonable possibility that the error contributed to the conviction. *State v. Dyess,* 124 Wis. 2d 525, 543, 370 N.W.2d 222, 231–32 (1985). If, as the state contends, no reasonable jury could find that defendant believed, reasonably or unreasonably, that his use

of force was necessary in self-defense, then the errors were harmless.[10]

Whether the evidence is sufficient to support a verdict is a question of law. We will not overturn a verdict if any possibility exists that the jury could have drawn the appropriate inference from the evidence adduced at trial to find the requisite guilt, unless the testimony was incredible as a matter of law. *State v. Alles,* 106 Wis. 2d 368, 377, 316 N.W.2d 378, 382 (1982). As the beneficiary of error, the state must prove it was harmless. *Dyess,* 124 Wis. 2d at 543, 370 N.W.2d at 232. For that reason, we view the evidence in the light most favorable to the defendant, and in this case the question is whether that evidence would have supported a verdict that defendant committed manslaughter/imperfect self-defense.

Defendant testified that he confronted Michaels in an alley about the theft of his knife and wallet, and that Michaels returned the wallet but not his knife. When defendant asked for his knife, Michaels grabbed his arm and they struggled. Defendant saw "a gleam" and realized Michaels had the knife in his hand. He unsuccessfully tried to kick Michaels and break his grip. Michaels said defendant wasn't going to tell the cops anything, and defendant then believed Michaels was about to kill him. He pulled his other knife out of his pocket and stabbed wildly at Michaels, trying "just to hit him somehow and get him off me, [to] save my life," until he felt the knife hit Michaels and "almost immediately, you know, he sucked in his breath . . . and he let go of me . . .." Defendant did not seek police assistance because he was afraid his homosexual activity would be revealed.

---

[10]There is a world of difference between this "could have found" test for harmless error and the "probable different result" test for discretionary reversal on grounds that justice has miscarried.

As trier of fact and ultimate arbiter of credibility, the jury could choose to believe defendant's testimony. *Holt*, 128 Wis. 2d at 121, 382 N.W.2d at 685. The jury could infer from defendant's testimony that defendant acted believing that he had to defend himself, but that a reasonable person in his circumstances would not have had the same belief or would not have used as much force. For that reason, we determine that the evidence could have supported a verdict of manslaughter/imperfect self-defense and that the instructional errors were not harmless.

9.  *Request that Court of Appeals Order New Trial*

When, as here, we are uncertain if and why the trial court ordered a new trial in the interests of justice, we will not decide under sec. 752.35, Stats., whether the real controversy has not been fully tried or whether it is probable that justice has miscarried. The decision of the trial court may moot the issue.

*By the Court.*—Order for a new trial reversed and remanded for further proceedings consistent with this opinion.