STATE of Wisconsin, Plaintiff-Respondent,

v.

Ronald E. SEIFERT, Defendant-Appellant.

Supreme Court

*No. 88-1297-CR. Argued November 29, 1989.—Decided May 3, 1990.*

(Also reported in 454 N.W.2d 346.)

For the defendant-appellant there were briefs by *James Bolgert,* Sheboygan and oral argument by *James Bolgert.*

For the plaintiff-respondent the cause was argued by *Sally L. Wellman,* assistant attorney general, with whom on the briefs was *Donald J. Hanaway,* attorney general.

CALLOW, WILLIAM G., J. This case is before this court on certification from the court of appeals pursuant to sec. (Rule) 809.61, Stats. The defendant-appellant Ronald E. Seifert (Seifert) appeals from a commit-

ment order of the Circuit Court for Sheboygan County, Judge Gary Langhoff. The order committed Seifert to the State Department of Health and Social Services to be placed in an appropriate institution for custody, care, and treatment.

There are four issues before this court on appeal. First, whether the crime of attempted imperfect self-defense manslaughter exists in Wisconsin under secs. 940.05(2) and 939.32, Stats. (1985–86).[1] Second, if that crime exists, whether, in Seifert's bifurcated trial for attempted first-degree murder, a jury instruction on the lesser-included offense of attempted imperfect self-defense manslaughter was available to Seifert, who presented evidence of an actual, unreasonable belief in the need to use force that stemmed entirely from mental delusions and paranoia. Third, whether the circuit court erred in refusing to instruct the jury that Seifert must be found not guilty of the crime of attempted first-degree murder unless the State proves beyond a reasonable doubt that Seifert did not actually believe the force used was necessary in self-defense. Fourth, whether the circuit court erred in refusing to reinstruct the jury in the closing instructions that it may consider Seifert's psychiatric and personal history in determining his intent or state of mind at the time of the incident.

We conclude that the crime of attempted imperfect self-defense manslaughter does exist under secs. 940.05(2) and 939.32, Stats. We further conclude that a

[1]The Wisconsin homicide statutes were revised recently, and the revised version took effect on January 1, 1989. In the revised version, imperfect self-defense manslaughter is set forth in sec. 940.01(2)(b), Stats. (1987–88). Because the trial in this case took place before January 1, 1989, the 1985–86 statutes apply here, and, unless otherwise indicated, all statutory references in this opinion will be to the 1985–86 statutes.

jury instruction on the lesser-included offense of attempted imperfect self-defense manslaughter was not available to Seifert because Seifert presented evidence of an actual, unreasonable belief in the need to use force that stemmed entirely from mental delusions and paranoia. Since Seifert was not entitled to this instruction, we conclude that the trial court did not err in refusing to instruct the jury that a third element of the crime of attempted first-degree murder is that the defendant did not actually believe the force used was necessary in self-defense. We finally conclude that it was proper for the trial court to refuse to reinstruct the jury in the closing instructions that it may consider Seifert's psychiatric and personal history in determining his intent or state of mind at the time of the incident.

The facts are as follows. On July 28, 1987, a criminal complaint was filed, charging Seifert with two counts of attempted first-degree murder. At the initial appearance, the circuit court, finding that there was reason to doubt Seifert's competency to proceed, committed Seifert to Winnebago Mental Health Institute (Winnebago) for an examination of his competency to stand trial. On August 17, 1987, after reviewing a report from a psychologist from Winnebago, the circuit court determined that Seifert was not competent and committed Seifert to Winnebago for treatment, until he was competent to stand trial. The circuit court continued this commitment on November 13, 1987.

At the preliminary examination, which was held on December 1, 1987, the circuit court determined that Seifert was competent to stand trial, and probable cause was found to believe that a felony had been committed by Seifert. Seifert entered a plea of not guilty and not guilty by reason of mental disease or defect to the two counts of attempted first-degree murder.

The guilt phase of Seifert's jury trial commenced on February 22, 1988. During the State's case-in-chief, the testimony showed that, on July 27, 1987, two uniformed city of Sheboygan police officers, James Tetzlaff and Dwain Jordan, went to Seifert's home in response to an emergency call regarding a disturbance. Wayne Boyce and two large dogs met the officers at the front door. The officers ordered Boyce to confine the dogs and remained outside the front door. Seifert then appeared at the front door with a can of beer in his left hand and with his right hand behind his back. Officer Jordan twice asked Seifert to show his right hand. Seifert refused and turned his body to prevent the officers from looking behind his back. At this point, Officer Jordan pointed his service revolver at Seifert, commanding Seifert to show his right hand. Instead of showing his right hand, Seifert said, "Go ahead and shoot me, Dewey [(Officer Jordan's nickname)], you have shot me in the past." Seifert then closed the front door. Sensing danger, the officers stepped to the side of the front door just as Seifert fired shots through the front door. The officers received superficial injuries.

Shortly thereafter, Seifert exited his residence unarmed and with both hands raised, yelling, "Shoot me, shoot me." The officers were able to arrest Seifert at this point. Seifert was charged as a result of this shooting.

After the State rested, the defense presented its case. The defense emphasized Seifert's mental condition at the time of the incident and Seifert's history of mental illness as revealed by both those close to him and those who had attempted to treat him.[2] Robert Schmidt

---

[2]At oral argument, the State conceded that the admission of this evidence comported with the requirements of this court's decisions in *Steele v. State*, 97 Wis. 2d 72, 294 N.W.2d 2 (1980), and *State v. Flattum*, 122 Wis. 2d 282, 361 N.W.2d 705 (1985).

of the Sheboygan Police Department testified that he was summoned to Seifert's residence the day of the shooting to transport Seifert to a holding cell. In the holding cell, according to Schmidt, Seifert stated that Schmidt had "machine gunned the hell out of" him, that he wanted to call his mortician, that he wanted to get to Madison before he died, that he wanted to talk to Kennedy or Castro, and that Kennedy had come to town to shoot him. Detective William Eichman, who at some point was also in the holding cell with Seifert, testified that Seifert told him that he had been shot below the belt, that he had been shot in 1982 and was already dead, and that a dead man could not be killed.

Seifert's mother testified about Seifert's history of mental illness and about his mental condition on the day of the shooting. Seifert's mother testified that Seifert had been in and out of psychiatric hospitals for many years. She stated that, for twenty years, he had held the belief that he invented the neutron bomb and that the CIA or KGB had implanted bugging devices in his body. According to Mrs. Seifert, when Seifert stopped taking his medication in the summer of 1987, his mental condition began to deteriorate; he saw snakes coming out of the walls and believed that his father and brother, both of whom had been dead for many years, were alive. With respect to the day of the shooting, July 27, 1987, Mrs. Seifert testified that Seifert and his sister began fighting over the remote control for the family's recently-purchased television. Apparently, Seifert thought there were "transmitter devices" in the remote control.

Several of Seifert's friends testified for the defense. They testified that Seifert was afraid of police officers and that he would hide from the police whenever he saw them. According to several friends, Seifert also thought the KGB, the CIA, the mafia, and "the Greeks" were

following him. One friend testified that Seifert was afraid to take the medication for his mental illness because he thought there were electronic bugs in it.

Patricia Uhler, a member of the forensic evaluation team at Winnebago, testified about Seifert's numerous hospitalizations at Winnebago, the first occurring in 1966. Uhler further testified about her examinations of him for the purpose of determining whether he was competent to stand trial in the case at hand. According to Uhler, Seifert told her that, on the day of the shooting, he thought the officers were enemy agents that wanted to see him about his development of the neutron bomb. Seifert also told Uhler that he shot the gun with the hope that the shots would prompt snakes in his basement to attack the officers.

Seifert did not testify on his own behalf.

At the conclusion of the guilt phase of Seifert's trial, Seifert's counsel made three requests regarding jury instructions. First, counsel requested that the circuit court give an instruction, similar to one given in the introductory instructions, that the jury may consider Seifert's psychiatric and personal history in determining Seifert's intent or state of mind at the time of the shooting. The circuit court denied this request, but told counsel he could argue this matter to the jury in his closing argument. Second, counsel requested an instruction on attempted imperfect self-defense manslaughter. The circuit court denied this request, reasoning as follows:

> First, the court does not believe that attempted self-defense manslaughter under [sec. 940.05(2), Stats.,] is a crime or a criminal defense in Wisconsin. However, assuming arguendo that it is a crime, the court denies the defendant's requested instruction on the following grounds.

60

Number one, the court finds that the facts of this case do not form the basis, or a sufficient basis for giving such instruction to the jury.

Secondly, the court finds that the proposed instruction mischaracterizes the law, attempted first degree murder and Section 940.05(2), and thirdly, the court finds that such instruction should only be given where a valid and bona fide claim of self-defense is made by the defendant. Such is not the case in the instant action.[3]

Third, counsel requested that the jury be instructed that Seifert must be found not guilty of attempted first-degree murder unless the State proves beyond a reasonable doubt that Seifert did not actually believe the force he used was necessary in self-defense. The circuit court denied this request for the same reasons it denied counsel's request for an instruction on attempted imperfect self-defense manslaughter.

The jury found Seifert guilty of both counts of attempted first-degree murder.

Seifert waived his right to a jury trial in phase two. Dr. Frederick Fosdal, a psychiatrist, was the only witness who testified in the second phase of Seifert's trial. Dr. Fosdal testified that in his opinion Seifert was suffering chronic paranoid schizophrenia at the time of the shootings. Dr. Fosdal further testified that, because Seifert was suffering from this mental disease, he lacked the mental capacity to appreciate the wrongfulness of his conduct and to conform his conduct to the mandates of the law. In Dr. Fosdal's opinion, the shooting occurred because of Seifert's schizophrenia and delusional think-

[3]The jury was instructed on the crimes of attempted first-degree murder and endangering safety by conduct regardless of life.

ing. Were Seifert to discontinue his medication, Dr. Fosdal asserted, the risk of violent acts by Seifert would increase. Dr. Fosdal recommended further institutionalization.

At the conclusion of Dr. Fosdal's testimony, Seifert's counsel requested that the circuit court find Seifert not guilty by reason of mental disease or defect. The State conceded that Seifert should be found not guilty by reason of mental disease or defect. The circuit court agreed with the parties, finding Seifert not guilty by reason of mental disease or defect on both counts of attempted first-degree murder. On February 24, 1988, the circuit court ordered Seifert committed to the Department of Social Services to be placed in an institution for custody, care, and treatment until discharged pursuant to sec. 971.17, Stats.

Seifert appealed from the commitment order. After receiving the parties' briefs, the court of appeals scheduled oral arguments and invited Walter Dickey, a professor at the University of Wisconsin Law School, to participate in oral argument and to file an amicus brief. Professor Dickey apparently accepted the invitation. After oral argument, the court of appeals certified one of the issues on appeal to this court, and this court accepted jurisdiction of the entire case.

■ Because the issues in this case primarily concern the crime of imperfect self-defense manslaughter, we begin with a discussion of the history of that crime in Wisconsin. Section 940.05, Stats., which sets forth the crime of imperfect self-defense manslaughter, provides as follows:

> Whoever causes the death of another human being under any of the following circumstances is guilty of a Class C felony:

. . . .

(2) Unnecessarily, in the exercise of his privilege of self-defense or defense of others or the privilege to prevent or terminate the commission of a felony.

Imperfect self-defense manslaughter mitigates murder. *See, e.g.,* Legislative Council Comment (Judiciary Committee) 1950 Report, *reprinted in Resource Materials on the Wisconsin Criminal Code,* at 57, U. Wis. Ext. (1983).

The crime of imperfect self-defense manslaughter has common-law origins. At common law, there were various types of manslaughter. One type of common-law manslaughter was the "[n]eedless killing of an opponent or assailant for purpose of self-defense." Also considered manslaughter at common law was "[n]eedless killing to prevent perpetration of felony or other unlawful act, or effect arrest of a felon." State of New York, *Report of the Law Revision Commission,* "Communication and Study Relating to Homicide," at 188–89 (702–03) (1937).

The early Wisconsin statutes, like the common law, contained various degrees of manslaughter. The crime of second-degree manslaughter included the following offense:

Every person who shall unnecessarily kill another, either while resisting an attempt by such other person to commit any felony, or to do any other unlawful act; or after such attempt shall have failed, shall be guilty of manslaughter in the second degree.

Wisconsin Revised Statutes of 1849, ch. 133, sec. 13. The language of this variant of second-degree manslaughter remained virtually unchanged until 1955. *See, e.g.,* Wisconsin Revised Statutes of 1858, ch. 164, sec. 13; Wisconsin Revised Statutes of 1878, ch. 181, sec. 4351; Wisconsin Statutes of 1898, Ch. 181, sec. 4351; Wisconsin

Statutes of 1925, sec. 340.15; Wisconsin Statutes of 1953, sec. 340.15.

In 1949, the process of substantially revising the Wisconsin Criminal Code began. This process culminated in the creation of a new criminal code that was enacted in 1955 and that took effect in 1956. Platz, *The Criminal Code,* 1956 Wis. L. Rev. 350. According to sec. 940.05(2) of the 1955 revised code, it was manslaughter for one to cause the death of another under the following circumstances:

> Unnecessarily, in the exercise of [one's] privilege of self-defense or defense of others or the privilege to terminate the commission of a felony.

This is the provision at issue here, the language not having changed since 1955. The legislative history surrounding the enactment of this provision in 1955 shows that this provision was intended to restate the aforementioned crime of second-degree manslaughter. Legislative Council Comment (Judiciary Committee) 1950 Report, *supra,* at 58; Legislative Council Comment (Judiciary Committee) 1953 Report, *supra,* at 61–62.[4]

Having provided this background information on the development of the imperfect self-defense manslaughter provision involved here—which appears to be nothing more than a restatement of the aforementioned second-degree manslaughter provision found in the pre-

---

[4]A group referred to as the Criminal Code Advisory Committee was formed to study the 1953 draft and to make amendments to the draft that would be considered by the 1955 legislature. The minutes of the June 3, 1954, meeting of this committee also show that the provision at issue here was merely intended to restate the aforementioned second-degree manslaughter provision. These minutes can be found at the Criminal Justice Reference Library at the University of Wisconsin Law School.

1955 code—we turn to a discussion of the issues presented on appeal.

The first issue we must address is whether, under sec. 940.05(2), Stats. (the imperfect self-defense manslaughter provision), and sec. 939.32, Stats. (the attempt provision), there is, in fact, a crime of *attempted* imperfect self-defense manslaughter in Wisconsin. One of the reasons given by the circuit court for denying Seifert's requested attempted imperfect self-defense manslaughter instruction was that no such crime exists, apparently because the attempt element was legally inconsistent with the crime of imperfect self-defense manslaughter. In this court, the parties are in agreement that the crime of attempted imperfect self-defense manslaughter exists.

We conclude that there is a crime of attempted imperfect self-defense manslaughter. The statute governing attempt crimes states that "[a]n attempt to commit a crime requires . . . an intent to perform acts and attain a result which, if accomplished, would constitute such a crime . . .." Section 939.32(3), Stats. We note that it is not proper to give an imperfect self-defense manslaughter instruction unless the evidence shows that the "person exercising the privilege of self-defense *intended* to use force or to threaten to use force against another for the purpose of self-defense." *State v. Mendoza,* 80 Wis. 2d 122, 151–52, 258 N.W.2d 260 (1977) (emphasis added). Because imperfect self-defense manslaughter is a crime requiring a showing of intent, there is a crime of attempted imperfect self-defense manslaughter. *See also State v. Oliver,* 108 Wis. 2d 25, 321 N.W.2d 119 (1982) (concluding that the crime of attempted heat-of-passion manslaughter exists).

Our conclusion that there is the crime of attempted imperfect self-defense manslaughter in Wisconsin allows us to address the primary issue raised in this appeal: Whether, in Seifert's bifurcated trial for attempted first-degree murder, a jury instruction on the lesser-included offense of attempted imperfect self-defense manslaughter was available to Seifert, at the guilt phase of the trial, when he presented evidence of an actual, unreasonable belief in the need to use force that stemmed entirely from mental delusions and paranoia. After examining the case law and the other authority on this subject, we conclude that Seifert was not entitled to the requested instruction.

In the case of *Terrill v. State,* 95 Wis. 276, 70 N.W. 356 (1897), *overruled on other grounds, Perugi v. State,* 104 Wis. 230, 240, 80 N.W. 593 (1899), this court interpreted sec. 4351, ch. 181, Revised Statutes of 1878, the second-degree manslaughter provision that is the forerunner to the provision at issue here. This court recognized that this provision was intended to mitigate the criminality of the defendant's actions where human infirmity or weakness caused the defendant to kill in an assaultive situation:

> The law, having regard to human infirmity, goes upon the ground that a party thus assailed and circumstanced, from weakness of judgment, fear, or other cause may intentionally and unnecessarily kill his assailant in resisting his attempt to commit any felony, or to do any unlawful act; and the criminality of such killing, by the statute, is therefore reduced to manslaughter in the second degree.

*Terrill,* 95 Wis. at 289.

Courts from other jurisdictions have interpreted the doctrine of imperfect self-defense manslaughter similarly. In *State v. Powell,* 84 N.J. 305, 419 A.2d 406 (1980), the New Jersey Supreme Court stated that the doctrine of imperfect self-defense manslaughter is properly applied where a defendant under attack misperceives the nature of the situation:

> [A] claim of imperfect self-defense [is justified] where the exercise of 'self-defense' was provoked by any act that clouded the defendant's perceptions as to the imminence of danger, the extent of the danger, or the amount of force called for to eliminate the danger. Certainly, if [the defendant's] perception of danger was unreasonable because he was in a state of fear or agitation because he had been attacked by [the deceased], recognition of this fact in mitigation of the offense would likewise be a 'fair concession to the frailties of man.'

*Powell,* 419 A.2d at 410 (footnote omitted). Moreover, in *Allison v. State,* 74 Ark. 444, 86 S.W. 409 (1904), the Arkansas Supreme Court stated that the doctrine of imperfect self-defense manslaughter applies where the defendant possesses a negligently-formed, but honest belief in the need to use force in self-defense:

> [I]f the slayer acts from an honest belief that it is necessary to protect himself, and not from malice or revenge, even though he formed such conclusion hastily and without due care, and when the facts did not justify it, still, under such a case, although such belief on his part will not fully justify him, it may go in mitigation of the crime, and reduce the homicide from murder to manslaughter.

*Allison,* 86 S.W. at 413. *See also* Moreland, *Law of Homicide* 93 (1952) (recognizing that a defendant is

guilty of imperfect self-defense manslaughter where the defendant has interpreted the situation contrary to what is reasonable).

The foregoing shows that the doctrine of imperfect self-defense manslaughter was meant to apply to the situation where the defendant has unnecessarily or unreasonably killed in self-defense. The killing was unnecessary or unreasonable, according to these authorities, because a defendant's actions in such a situation stem from human weakness, causing the defendant to make an error in judgment or perception, or to possess a negligently-formed belief about the situation.

In light of this discussion, it is evident why Seifert was not entitled to an attempted imperfect self-defense manslaughter instruction or conviction. In this case, the record shows that Seifert's actual belief in the need to use force was caused entirely by his insane delusions. Clearly, Seifert did not make an error of judgment or perception in interpreting his situation, nor did he possess a negligently-formed belief about his situation, thus rendering his actions unreasonable under the objective, prudent-person standard. Rather, his actions, propelled by his insane delusions, display an utter incapability to reason or to comprehend or judge the nature of his situation. The doctrine of imperfect self-defense manslaughter was simply never intended to cover situations such as this one where it is entirely the defendant's mental disease or defect, not an error in judgment or perception or a negligently-formed perspective of the situation, that motivates the defendant's actions.[5]

---

[5]Nothing we have said here is inconsistent with what we said in cases such as *State v. Gomaz,* 141 Wis. 2d 302, 414 N.W.2d 626 (1987), or *Ross v. State,* 61 Wis. 2d 160, 211 N.W.2d 827 (1973), where this court interpreted the scope of the doctrine of imperfect self-defense manslaughter. In *Gomaz,* for example, this court

■■■ Instead of being relevant to the affirmative defense of attempted imperfect self-defense manslaughter, Seifert's mental illness is relevant to the affirmative defense of mental disease or defect. The affirmative defense of mental disease or defect, which is the subject of the second phase of a bifurcated trial, recognizes that it would be unjust to hold a person criminally responsible for conduct that was the product of insanity:

> When a mentally ill person engages in offensive conduct made punishable by law, society is faced with the question whether at the time of engaging in the offensive conduct the accused was dominated or affected by the mental illness to so substantial a degree that society cannot, in good conscience, hold him responsible for the conduct as a crime, *i.e.*, punish him.

*State v. Esser,* 16 Wis. 2d 567, 585, 115 N.W.2d 505 (1962). *See also Steele v. State,* 97 Wis. 2d 72, 96, 294 N.W.2d 2 (1980). In the second phase, a defendant is absolved of responsibility for his or her criminal conduct if the court finds that the defendant, because of mental illness, lacked the substantial capacity either to appreciate the wrongfulness of such conduct or to conform such conduct to the requirements of the law. Section 971.15(1), Stats. (1987–88). Thus, when a defendant's

---

stated that imperfect self-defense manslaughter applies where the defendant has an actual belief in the need to use force in self-defense but the belief or the amount of force was unreasonable. *Gomaz,* 141 Wis. 2d at 310. Here, we merely explain that unnecessary or unreasonable acts in the context of imperfect self-defense manslaughter refer to acts resulting from an error in judgment or perception in contrast to the acts of a person of ordinary intelligence and prudence, not to acts resulting from a complete absence of reason and rational thought.

unlawful actions are totally the product of the defendant's mental illness, the law relieves the defendant of criminal responsibility for those actions. In the case at hand, Seifert's belief that the police officers had come to kill him was clearly the product of his insane delusions, and he was therefore entitled to the finding of not guilty by reason of mental disease or defect.

We next address Seifert's claim that the circuit court erred in refusing to instruct the jury that a third element of the crime of attempted first-degree murder is that the defendant did not actually believe the force used was necessary in self-defense. Because we have already concluded that attempted imperfect self-defense manslaughter is not at issue in this case, the circuit court was not in error when it refused to give such an instruction. *See State v. Harp,* 150 Wis. 2d 861, 884–85, 443 N.W.2d 38 (Ct. App. 1989).

Finally, Seifert contends that the circuit court erred in refusing to instruct the jury in the closing instructions at the guilt phase of the trial that it could consider his psychiatric and personal history in determining his intent or state of mind at the time of the incident. This instruction was apparently given during the general introductory instructions; therefore, Seifert is claiming that the circuit court was in error in refusing to reinstruct the jury on this point.

The trial judge has broad discretion in issuing jury instructions based on the facts and circumstances of each case. *State v. Kemp,* 106 Wis. 2d 697, 318 N.W.2d 13 (1982). In support of its position that the trial court was within its discretion in refusing to repeat the instruction, the State cites the decision of the court of appeals in *State v. Roubik,* 137 Wis. 2d 301, 404 N.W.2d

105 (Ct. App. 1987). In *Roubik*, the court of appeals noted that the trial court does not abuse its broad discretion in issuing jury instructions when it refuses to give particular instructions if the general instructions given by the trial court adequately cover the law applicable to the facts. *Roubik*, 137 Wis. 2d at 308–09. We agree with the State that the reasoning of *Roubik* compels the conclusion that, because this instruction had already been given, it was not necessary to repeat it.

In summary, we conclude that there is a crime of attempted imperfect self-defense manslaughter under secs. 940.05(2) and 939.32, Stats. We further conclude that Seifert was not entitled to a jury instruction on the lesser-included offense of attempted imperfect self-defense manslaughter because Seifert presented evidence of an actual, unreasonable belief in the need to use force that stemmed entirely from mental delusions and paranoia. A defendant's mental disease or defect may, in the second phase of a bifurcated trial, relieve the defendant of criminal responsibility for his or her conduct. Since Seifert was not entitled to this instruction, we conclude that the trial court did not err in refusing to instruct the jury that a third element of the crime of attempted first-degree murder is that the defendant did not actually believe the force used was necessary in self-defense. We finally conclude that it was proper for the trial court to refuse to reinstruct the jury in the closing instructions that it may consider Seifert's psychiatric and personal history in determining his intent or state of mind at the time of the incident.

*By the Court.*—The commitment order of the circuit court is affirmed.

SHIRLEY S. ABRAHAMSON, J. (dissenting). The majority opinion lends itself to at least two

possible interpretations. One reading is that the crime of attempted imperfect self-defense manslaughter, sec. 940.05(2), Stats. (1985-86),[1] does not include an actor whose actual, unreasonable belief in the need to use force stems entirely from mental disease or defect. See majority op. pp. 67-68 n.5, 69-70. A second reading is that the crime of attempted imperfect self-defense manslaughter encompasses an objective element. Because neither reading of the majority opinion is supported by the statutes or our case law, I dissent.

If the majority opinion holds that attempted imperfect self-defense manslaughter may not be applied to individuals suffering from mental disease or defect, it offers no justification for this holding, and the holding creates significant legal problems.

The majority's distinction between those who are "normal" and have an unreasonable belief and those who suffer from mental disease or defect and have an unreasonable belief is not justified in the context of attempted imperfect self-defense manslaughter. According to the majority opinion, if a rational person unreasonably perceives an unlawful threat to his person, the circuit court will give an instruction for attempted imperfect self-defense manslaughter. The majority explains this result by characterizing the "normal" person's error in judgment as the result of "human weakness, causing the defendant to make an error in judgment or perception." Majority op. p. 68. If, on the other hand, a person suffer-

---

[1]Section 940.05(2), Stats. (1985-86), provides:

Whoever causes the death of another human being under either of the following circumstances is guilty of a Class C felony:

. . .

(2) Unnecessarily, in the exercise of his privilege of self-defense or defense of others or the privilege to prevent or terminate the commission of a felony . . ..

ing from mental disease or defect unreasonably perceives an unlawful threat to his person, the circuit court will not give the instruction. The majority opinion offers no explanation why mental disease or defect should not be considered "a human weakness causing the defendant to make an error in judgment or perception." The majority merely concludes that "an utter incapability to reason or comprehend or judge the nature of [the] situation" does not constitute an unreasonable belief under sec. 940.05(2). Majority op. p. 68. I do not think the crime of imperfect self-defense manslaughter and the defense of not guilty by reason of mental disease or defect are mutually exclusive.

The single case cited by the majority opinion, *Terrill v. State*, 95 Wis. 276, 70 N.W. 356 (1897), provides no support for the proposition that mental disease or defect should not mitigate homicide. The case simply states that the law will have regard for human infirmity and excuse intentional acts stemming from "weakness of judgment, fear, or other cause" that result in homicide. Nothing in the case suggests that courts should not consider mental illness one of the human infirmities. The other cases the majority opinion cites establish that an "honest belief" or a conclusion formed "hastily and without due care" qualify for the instruction. These cases fail to support the majority opinion's contention that mental disease or defect may not mitigate homicide.

The majority's holding that the crime of attempted imperfect self-defense does not apply to an individual suffering from mental disease or defect creates significant legal problems. How is the circuit court to know in the first phase of the trial whether the defendant has a mental disease or defect? In a bifurcated trial, the defendant's mental state is determined in the second phase of the trial. In this appeal, both phases of the trial have

73

been completed; this court reviews the first phase knowing the result of the second phase. Unlike an appellate court, the circuit court does not have the benefit of hindsight.

Moreover, if an actor does not enter a plea of not guilty by reason of mental disease or defect, is the actor entitled to instructions on the lesser included offense of attempted imperfect self-defense manslaughter? Does the majority opinion thus force a defendant to elect between getting jury instructions on the lesser included offense and pleading not guilty by reason of mental disease or defect? Is forcing such an election lawful?

The second possible interpretation of the majority opinion is that it adopts an objective element, along with two subjective elements. The state's brief urges this interpretation of sec. 940.05(2), Stats. (1985–86).

The objective element, according to the state's brief, is that the actor must have a reasonable belief that some unlawful interference with his or her person is threatened. In other words the actor must have an objectively rational basis for resorting to self-defense. An objectively *unreasonable* belief may stem, I assume, from a number of causes, including but not limited to mental disease or defect.

The two subjective elements are: (1) The actor subjectively believes that force was necessary to prevent or terminate the interference, but the belief is unreasonable; or (2) the actor subjectively believes that the amount of force used was necessary to prevent or terminate the interference, but the belief is unreasonable.

I cannot find support for the objective element in the statutory language or the cases of this court.

While there has been some disagreement among commentators, after reviewing the statutory formulations, the case law, and the public policy underlying the

crimes and the defenses, I conclude that the crime of attempted imperfect self-defense manslaughter under sec. 940.05(2), Stats. (1985-86), is based on the actor's subjectively held but unreasonable belief that the use of deadly force was necessary for self-defense, even when the actor's actual, unreasonable belief stems entirely from the defendant's mental disease or defect.[2] I reach this conclusion on the basis of the text of the statute and the legislative history of sec. 940.05(2), including its recent restatement in sec. 940.01(2)(b), Stats. (1987-88).[3]

[2]For discussions of the Wisconsin law generally supporting the position I espouse, *see, e.g.,* 2 LaFave and Scott, *Substantive Criminal Law,* p. 272, n.6 (1986); 1950 Report of the Legislative Council, pp. 56-58; 1953 Judiciary Committee Report on the Criminal Code, pp. 60-62; *State v. Gomaz,* 141 Wis. 2d 302, 310, 414 N.W.2d 626 (1987), citing *Ross v. State,* 61 Wis. 2d 160, 166-68, 211 N.W.2d 827 (1973); *Roe v. State,* 95 Wis. 2d 226, 243-44, 290 N.W.2d 291 (1980); Fullin, *Revision of the Criminal Code,* 62 Wisconsin Lawyer 10, 12-13 (June 1989); 1987 Senate Bill 191; Minutes of the Judicial Council Special Committee on Homicide and Lesser Included Offenses (Sept. 1982-May 1983) and Minutes of the Judicial Council (1982-1987), *passim* (available at the Judicial Council, 25 West Main Street, Madison, Wis.); State's Brief, p. 33, n.4; Amicus Brief, Court of Appeals.

[3]Section 940.01(2)(b), Stats. (1987-88), provides:

The following are affirmative defenses to prosecution under this section which mitigate the offense to 2nd-degree intentional homicide under s. 940.05:

. . .

(b) *Unnecessary defensive force.* Death was caused because the actor believed he or she or another was in imminent danger of death or great bodily harm and that the force used was necessary to defend the endangered person, if either belief was unreasonable.

The Judicial Council's Prefatory Note to 1987 Sen. Bill 191 which was enacted as part of the 1987 Acts ch. 399 states that "the revised code preserves the traditional elements of each

In the case at bar, the defendant presented psychiatric and personal history evidence in the first phase of a bifurcated trial on attempted first degree murder charges to prove that he had an actual, unreasonable belief in the need to use force. I believe that the circuit court erred in failing to give a jury instruction on the lesser included offense of attempted imperfect self-defense manslaughter.[4]

For the reasons set forth, I dissent.

offense but modernizes terminology." I therefore conclude that the new statute is the same as the old in setting forth the elements of attempted imperfect self-defense manslaughter.

[4]I do not understand the majority opinion's discussion about the reinstruction. In this case no instruction was given on the defendant's subjective belief about imminent danger of death. Thus the issue to which evidence of the defendant's psychiatric and personal history was relevant was not before the jury.