**Charles C. COOGAN, Petitioner–Appellant,**

**v.**

**Gary McCAUGHTRY, Respondent–Appellee.**

**No. 91–1869.**

United States Court of Appeals, Seventh Circuit.

Argued Nov. 6, 1991.

Decided April 1, 1992.

Michael Tobin, Hudson, Wis. (argued), for petitioner-appellant.

James M. Freimuth, State of Wis., Dept. of Justice, Madison, Wis. (argued), for respondent-appellee.

Before CUMMINGS and RIPPLE, Circuit Judges, and WILL, Senior District Judge.*

PER CURIAM.

On April 20, 1979, Charles Coogan shot and killed a bartender and a patron at the Four Corners Tavern in Chippewa Falls, Wisconsin. After a jury trial Coogan was convicted on two counts of first degree murder and two counts of armed robbery. He received two consecutive life sentences for the murder convictions and 10 years for the robbery convictions.

Seven years later, Coogan filed a motion for a new trial alleging that he was denied effective assistance of counsel, that he was entitled to a new trial based on newly discovered evidence, and that fundamental fairness required that he be retried. The state trial court held an evidentiary hearing on these claims and denied the motion on all grounds. The court of appeals affirmed, and the Wisconsin Supreme Court subsequently denied Coogan's petition for review. *State v. Coogan*, 154 Wis.2d 387, 453 N.W.2d 186, *review denied*, 454 N.W.2d 806 (1990).

On May 21, 1990, Coogan sought habeas corpus relief in federal district court. He argued that his sixth amendment right to effective assistance of counsel was violated when his attorney failed to present a witness in support of his insanity plea. He also contended that his rights to testify, present witnesses on his behalf and to be tried by a jury were violated when the state court refused to allow him to present evidence at a new trial in support of his claim that he committed his crimes during a flashback to his Vietnam combat experiences. Finally, he argued that fundamental fairness entitled him to a new trial.

Judge Crabb found that Coogan's constitutional rights had not been violated, and rejected all of Coogan's claims for relief.

* The Honorable Hubert L. Will, Senior Judge of the United States District Court for the Northern

Coogan then filed a notice of appeal, and the district court issued a certificate of probable cause.

■■■ After reviewing the parties' briefs and the record, and hearing oral argument, we agree that Coogan's petition for habeas corpus should be denied. Coogan has failed to demonstrate that his counsel's representation at the responsibility phase of his trial was deficient or, even if his attorney's performance was deficient, that his failure to present expert testimony or argument was prejudicial. He has also not shown that the evidence he wishes to introduce at a new trial was not available at the time of his trial or would probably result in an acquittal. In addition, there was ample evidence based on which the state courts could find that Coogan's post-hypnotic recall was unreliable. Finally, Coogan was not denied due process. As noted, denial of his motion for a new trial based on alleged ineffective assistance of counsel and newly discovered evidence was proper. Furthermore, Coogan received adequate assistance from a psychiatrist, Dr. Leigh Roberts. Although Dr. Roberts did not diagnose Coogan as suffering from post-traumatic stress disorder due to his experiences in Vietnam, he did examine Coogan and testified that Coogan suffered from a mental disease.

Because Judge Crabb has thoroughly and completely analyzed Coogan's arguments for relief, and any additional discussion by this court would add little, if anything, we adopt the district court's opinion as the opinion of this court. Judge Crabb's opinion follows in an appendix to this opinion.

AFFIRMED.

### APPENDIX

### No. 90 C 4118

### IN THE UNITED STATES DISTRICT COURT

### FOR THE WESTERN DISTRICT OF WISCONSIN

BARBARA B. CRABB, District Judge.

District of Illinois, Eastern Division, is sitting by designation.

This is a petition for a writ of habeas corpus. Petitioner, an inmate at the Waupun Correctional Institution, Waupun, Wisconsin, contends that he is in custody in violation of the Constitution of the United States. 28 U.S.C. § 2254. Petitioner seeks relief on three separate grounds: that he was denied effective assistance of counsel in violation of the Sixth Amendment; that the state court violated his constitutional rights to testify, to call witnesses on his behalf, and to a jury trial when it rejected his motion for a new trial based on newly discovered evidence; and that he is entitled to a new trial on grounds of fundamental fairness. Petitioner has exhausted his state remedies as required under 28 U.S.C. § 2254.

I conclude that petitioner did not receive ineffective representation because his counsel's performance was not deficient. Moreover, even if the representation could be characterized as deficient, petitioner was not prejudiced by it. I conclude also that petitioner's constitutional rights were not abridged by the state court's refusal to grant a new trial in light of new evidence. Some of the proffered evidence was inadmissible, and the rest would not constitute new evidence warranting a retrial. Last, I conclude that petitioner's fundamental fairness claim has no merit. Accordingly, petitioner's request for a writ of habeas corpus will be denied.

■ In habeas corpus actions, state court findings of fact are presumed correct unless upon consideration of the record as a whole, the federal court concludes that factual determinations are not "fairly supported" by the record. 28 U.S.C. § 2254(d)(8); *Burns v. Clusen*, 798 F.2d 931, 940 (7th Cir.1986). Petitioner does not object to the accuracy or completeness of the state court findings. Therefore, I adopt the following facts I have paraphrased from the Wisconsin Court of Appeals' decision in *State v. Coogan*, 154 Wis.2d 387, 453 N.W.2d 186 (Ct.App.1990), supplemented by pertinent facts from the record.

### Facts Found by State Courts

Petitioner, a Vietnam war veteran, was convicted of two counts of first-degree murder for killing two men during a 1979 robbery of a Chippewa County, Wisconsin bar. At the time of trial, petitioner claimed to remember little or nothing of the incident.

Evidence at petitioner's trial disclosed the following: on April 20, 1979, petitioner entered the Four Corners Tavern, pointed a gun at the bartender and demanded money. After the bartender told petitioner to get it himself, petitioner shot the bartender in the chest, took money from the cash register, and also shot a patron who moved. Petitioner told the other patrons that he did not wish to harm anyone, but only wanted the money. Before leaving, petitioner said that his armed accomplice was waiting outside and that no one was to exit the bar for ten minutes.

Petitioner left the Four Corners Tavern, and drove to the Lounge Bar, where he was observed buying drinks. Petitioner remarked that he had heard on the police scanner on the way home from work that two people had been shot at the Four Corners. Petitioner does not have a scanner and had not been at work that day. When police arrested petitioner, they found over $273 on his person and a bank slip bearing the name of the murdered bar patron. They also tested petitioner's blood alcohol level and found it to be .21%.

■ Petitioner was examined by two psychiatrists who testified at trial. During the first, or "guilt" phase of the trial, Dr. Leigh Roberts testified for the defense that he had diagnosed petitioner as having a "borderline personality."[1] He testified further that when petitioner committed the killings, his intoxication exacerbated his mental disorder to produce a "mini-psycho-

---

1. In Wisconsin, a defendant may plead not guilty as well as not guilty by reason of mental disease or defect (a plea of nonresponsibility). Wis.Stat. § 971.06(1)(d). In such cases, a bifur-
cated trial is held, with the issue of guilt decided in phase one and the issue of responsibility decided in phase two if the jury returns a verdict of guilty in phase one.

sis." Roberts expressed the opinion that on the day of the killings petitioner had a substantially reduced ability to form intent.

Dr. Darold Treffert testified for the prosecution at phase one of the trial. He found that petitioner had suffered a blackout as a result of voluntary intoxication on the day of the killings. He described petitioner as having a paranoid personality.

Although most of his testimony had been put before the jury during the guilt phase of the trial, Dr. Roberts was prepared to testify at the second phase of the trial that petitioner had a severe personality disorder which when combined with his alcoholic consumption produced a mini-psychosis during which he could not control his impulses. Petitioner's attorney believed that this testimony did not constitute a legal insanity defense under *State v. Kolisnitschenko*, 84 Wis.2d 492, 267 N.W.2d 321 (1978). After conferring with Dr. Roberts and petitioner, and examining the applicable law, petitioner's attorney decided not to present any evidence at the responsibility phase. This decision was a reasonable one at the time of the trial.

The jury convicted petitioner of two counts of first-degree murder and two counts of armed robbery. The jury found that he was sane at the time of his crimes. The convictions were affirmed by the appellate court. *State v. Coogan*, 103 Wis.2d 692, 310 N.W.2d 652 (Ct.App.1981).

While in prison, petitioner began therapy with Dr. Richard Arnesen, a prison psychiatrist who had worked with petitioner in the past. Based on petitioner's description of his wartime experiences and of his memory of the events of April 20, 1979, and his erratic behavior over the years, Dr. Arnesen diagnosed petitioner as suffering from post-traumatic stress disorder.[2] Dr. Arnesen's hypnosis sessions with petitioner facilitated petitioner's ability to recall traumatic Vietnam experiences. During these sessions, petitioner related a version of the events at the Four Corners Tavern that, if

believed, demonstrated that he was suffering a dissociative flashback episode to Vietnam in which he was searching a suspected enemy hut for Viet Cong guerrillas or documents.

Dr. Arnesen presented his evidence to other psychiatrists, including Dr. Gary Palmer, a psychiatrist with the Veterans Administration and an expert in post-traumatic stress disorder, who concurred in the diagnosis that petitioner suffered from the disorder.

Relying on the new diagnosis and his hypnotically refreshed recollection, petitioner filed a motion in state court for a new trial at which he could present both evidence that at the time of the killings he was having a flashback and believed he was in combat in Vietnam, and expert testimony diagnosing his condition as post-traumatic stress disorder. In addition, petitioner contended that he had received ineffective assistance of counsel because defense counsel failed to introduce expert testimony at the mental responsibility phase of his trial. To support the diagnosis of post-traumatic stress disorder, petitioner also sought to introduce lay testimony concerning his behavior since the war that would have included evidence that on the day in question petitioner had inexplicably shot at a swimming dog, talked about his Vietnam experiences, and spoken in Vietnamese at the Lounge Bar.

The trial court rejected petitioner's claim for a new trial, ruling that petitioner's hypnotically refreshed testimony was too unreliable to be admissible at trial. It ruled also that without this evidence, there could be nothing on which the expert's could base the rest of their testimony.

### *Additional Facts from the Record*

Prior to the initial trial, Dr. Roberts submitted a report to petitioner's counsel in which he stated that petitioner's alcohol usage exacerbated his mental disease, resulting in his inability to conform his conduct to law.

---

**2.** Post-traumatic stress disorder is a mental disorder stemming from a psychologically distressing event such as combat, characterized by flashbacks to the traumatic event, amnesia, and avoidance of circumstances reminiscent of the event.

In the guilt phase of the trial, Dr. Roberts testified that petitioner's personality disorder existed independently of alcohol, but that if petitioner did not drink, the likelihood of his experiencing loss of control and loss of contact with reality would be greatly decreased.

At the mental responsibility phase of the trial, Dr. Treffert testified for the state that in his opinion petitioner's alcohol consumption and personality disorder had not affected petitioner's capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the law on April 20, 1979.

The jury was instructed at phase two of that "a mental disease which is the product of a voluntarily induced state of intoxication by alcohol does not constitute a mental disease which is recognized as a defense under the law."

At the evidentiary hearing on petitioner's motion for a new trial, Dr. Treffert conceded that if petitioner had experienced amnesic episodes unassociated with drinking, as Dr. Arnesen had testified, some explanation other than an alcohol blackout would be necessary.

Petitioner testified at the hearing about his combat experiences in Vietnam, and stated that at the time of the original trial he was unaware of post-traumatic stress disorder. He testified further that because of his therapy with Dr. Arnesen, he now recalled the incidents of April 20, 1979, during which he believed that he killed two enemy soldiers in Vietnam.

Also at the hearing, Dr. Roger McKinley, a psychologist with experience in hypnosis, testified that he had listened to two tapes of Dr. Arnesen's sessions with petitioner that had been selected by the prosecutor. He characterized portions of these tapes as containing leading or suggestive questions. Dr. Palmer testified for petitioner, stating that from his review of several audiotapes, he did not find a high degree of suggestiveness in Dr. Arnesen's hypnosis technique.

Petitioner proffered lay testimony that would have included testimony by his sister and former girlfriends about strange behavior on his part, such as scooting around the floor and making machine gun noises, and sleeping in his clothes for days at a time.

The state court of appeals upheld the trial court's ruling on the inadmissibility of petitioner's posthypnotic testimony. The court of appeals held that expert testimony of the post-traumatic stress disorder diagnosis was admissible but that the experts could not testify about petitioner's posthypnotic statements that were the underlying factual bases for their diagnoses. However, the expert testimony did not require that petitioner be given a new trial because it failed to create a reasonable probability of a different result at a new trial. The court of appeals found that the lay testimony did not constitute newly discovered evidence because it could have been discovered before the original trial. It upheld the trial court's ruling that petitioner had not received ineffective assistance of counsel.

In an order dated March 13, 1990 the Supreme Court of Wisconsin denied petitioner's request for review.

OPINION

## I. INEFFECTIVE ASSISTANCE OF COUNSEL

■ In order to prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate that 1) counsel's representation fell below an objective standard of reasonableness, and 2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–88, 694, 104 S.Ct. 2052, 2064–65, 2068, 80 L.Ed.2d 674 (1984); *Santos v. Kolb*, 880 F.2d 941, 943 (7th Cir.1989), *cert. denied*, 493 U.S. 1059, 110 S.Ct. 873, 107 L.Ed.2d 956 (1990). A defendant must satisfy both the deficiency and prejudice prongs of the *Strickland* inquiry. *Santos*, 880 F.2d at 943.

■ Judicial scrutiny of counsel's performance should be highly deferential, precluding a finding of ineffectiveness if a

defendant is not able to overcome the presumption that counsel's challenged actions fell within the broad range of sound trial strategy. *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065.

Petitioner's contention is that his counsel's performance was deficient because he failed to investigate and present a possible insanity defense. The state court of appeals found as fact that petitioner's counsel did investigate the insanity defense but made a reasonable tactical decision not to present testimony on the issue. I must presume that this finding is correct unless it is not fairly supported by the record. 28 U.S.C. § 2254(d)(8). Therefore, although petitioner contends, with some plausibility, that his attorney misinterpreted applicable precedent in deciding that the testimony was inadmissible, whether he did so is immaterial if his interpretation was reasonable.

Counsel's decision not to present Dr. Roberts's testimony in phase two was based on *State v. Kolisnitschenko,* 84 Wis.2d 492, 267 N.W.2d 321 (1978), in which the Wisconsin supreme court upheld a jury instruction stating that the definition of a mental illness does not include a "mental disease which is the product of a voluntarily induced state of intoxication." Counsel was aware of the extensive evidence of petitioner's voluntary intoxication presented in the first phase of petitioner's trial. Petitioner's counsel considered this evidence and discussed with Dr. Roberts and petitioner his decision not to present testimony in phase two. The record fairly supports the state court's finding that petitioner's counsel investigated a defense of nonresponsibility and reached a reasonable conclusion not to pursue the defense in view of what he believed to be adverse case law.

In general a lawyer's decision not to call a witness is a tactical choice not subject not review by a court. *Cartee v. Nix,* 803 F.2d 296 (7th Cir.1986), *cert. denied,* 480 U.S. 938, 107 S.Ct. 1584; 94 L.Ed.2d 774 (1987). Petitioner offers two arguments in support of his contention that his attorney's decision was not reasonable in his case.

Petitioner contends first that counsel had no tactical reason to forgo the potentially favorable testimony of Dr. Roberts on the issue of petitioner's sanity. However, counsel did have tactical reasons: he believed the testimony was inadmissible and that the judge was not favorably disposed to his theory of defense.

Second, petitioner contends that counsel did not make a reasonable decision because he abandoned petitioner's only possible defense. *See Chambers v. Armontrout,* 885 F.2d 1318, 1322–23 (8th Cir.1989), *reaff'd on rehearing,* 907 F.2d 825 (8th Cir.1990) (en banc), *cert. denied,* — U.S. —, 111 S.Ct. 369, 112 L.Ed.2d 331 (1990) (counsel ineffective for failure to call witnesses to support only plausible defense of self-defense); *Rogers v. Israel,* 746 F.2d 1288 (7th Cir.1984) (counsel had duty to ask an expert whether defendant would have been immediately incapacitated by his wound in order to rebut the state's expert).

In *Chambers,* the failure to call a particular witness meant that there was no evidence to support a jury instruction on self-defense. 885 F.2d at 1323. In this case, however, the jury had already listened to Dr. Roberts' testimony and cross-examination in phase one. Petitioner's plea of nonresponsibility was before the jury, and the jury was instructed on the relevant law. *See Nutall v. Greer,* 764 F.2d 462, 466 (7th Cir.1985) (counsel's failure to argue accidental death to jury in closing was not deficient where counsel had elicited defendant's account of facts on direct examination).

I conclude that there is ample support in the record for the state court's finding that counsel's performance was not deficient. If I were to consider the issue *de novo,* I would conclude that petitioner has failed to overcome the presumption that his attorney's decision "fell outside the broad range of sound trial strategy." *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065.

Moreover, even if I had found defense counsel's decision was so unreasonable as to constitute deficient performance, I

would deny the petition on this ground, because counsel's failure to call Dr. Roberts in the second phase of the trial did not prejudice petitioner.

Petitioner contends that prejudice can be presumed in this case because no real adversary proceeding occurred at phase two of the trial. It is his position that counsel failed to contest the issue of responsibility when he failed to present evidence on petitioner's behalf. He cites *United States v. Cronic,* 466 U.S. 648, 659, 662, 104 S.Ct. 2039, 2047, 2048, 80 L.Ed.2d 657 (1984), which holds that the Sixth Amendment right to counsel is violated when counsel "entirely fails to subject the prosecution's case to meaningful adversary testing" such that there is a "breakdown in the adversarial process that would justify a presumption that respondent's conviction was insufficiently reliable to satisfy the Constitution." There is no evidence to suggest such a breakdown in this case. Although counsel declined to present evidence in the second phase of the trial, he maintained petitioner's plea of not guilty by reason of mental defect or disease, objected for the record, and cross-examined Dr. Treffert in front of the same jury during phase one.

When prejudice cannot be presumed, a defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. *See also United States v. Adamo,* 882 F.2d 1218 (7th Cir.1989) (failure to object to co-conspirator's testimony was not ineffective assistance where there was substantial record evidence of guilt); *McKinney v. Israel,* 740 F.2d 491 (7th Cir.1984) (lawyer's lack of knowledge regarding admissibility of psychiatric testimony on issue of intent did not prejudice defendant where there was no evidence that would have supported second-degree murder conviction based on lack of intent). The Supreme Court has defined a "reasonable probability" as "a probability sufficient to undermine confidence in the outcome." *Strick-*

*land,* 466 U.S. at 694, 104 S.Ct. at 2068. It is not enough to show that counsel's errors had a "conceivable effect on the outcome." *Id.* at 693, 104 S.Ct. at 2067. A court must consider the totality of the evidence that was before the judge or jury. *Id.* at 695, 104 S.Ct. at 2068.

Petitioner contends that if Dr. Roberts had been called to testify at phase two about his ultimate conclusion that petitioner had a mental disease which when combined with intoxication made him unable to conform his conduct to the law, there would have been a "substantial basis" for a verdict of nonresponsibility. He argues that the reasonable probability test is satisfied because Dr. Roberts's assessment counterbalanced the testimony of Dr. Treffert, so that it cannot be said to be clear how the jury would have decided if presented with the additional information.

The fact that the jury *might* have decided differently is not the same thing as a "reasonable probability" that the outcome would have been different. The jury had already heard most of Dr. Roberts' testimony, albeit in a different phase of the trial. Furthermore, it is not at all clear that Dr. Roberts's testimony was ultimately favorable to the defense. Although it might have been helpful to petitioner to have put into evidence Dr. Roberts's opinion that the combination of a personality disorder and drink made petitioner unable to conform his conduct to law, that opinion does not clearly rebut the testimony of the state's expert, Dr. Treffert. Dr. Roberts was unable to say that petitioner would have committed the same conduct had he not been drinking. Dr. Treffert acknowledged that petitioner suffered from paranoia, but found that on the day in question petitioner was voluntarily intoxicated and able to appreciate the wrongfulness of his conduct.

The state court of appeals concluded that there was no prejudice to petitioner in light of all the evidence supporting the state's case and the fact that most of Dr. Roberts's testimony had been put before the jury during the guilt phase of the trial.[3] I

---

3. Although in phase one the judge instructed the jury that they were to apply evidence only heard

in that phase to their verdict, he did not instruct them in phase two of the trial that they were

see no basis on which to reach a different conclusion. I conclude that petitioner has not demonstrated a reasonable probability that the jury would have come to a different conclusion during the responsibility phase of the trial if counsel had called Dr. Roberts during this phase.

## II. NEWLY DISCOVERED EVIDENCE

As his second ground for habeas corpus relief, petitioner contends that his constitutional rights were violated by the state court's denial of his post-conviction motion for a retrial based on newly discovered evidence. A threshold issue is whether a federal court can even consider such a claim in a petition for habeas corpus.

▮ As a general rule, newly discovered evidence that bears only on the question of guilt or innocence is not reviewable by a federal court on a motion for habeas corpus relief. *Townsend v. Sain,* 372 U.S. 293, 317, 83 S.Ct. 745, 759, 9 L.Ed.2d 770 (1963). *See also Swindle v. Davis,* 846 F.2d 706, 707 (11th Cir.1988) (per curiam); *Armstead v. Maggio,* 720 F.2d 894, 896–97 (5th Cir.1983) (per curiam); *United States ex rel. Milone v. Camp,* 643 F.Supp. 679, 685 (N.D.Ill.1986). Federal courts are empowered to grant habeas relief only on a showing that a defendant has been denied rights guaranteed under the Constitution or laws of the United States. Those rights include the right to fair procedures at trial; they do not include the right to a particular result. However, in some situations newly discovered evidence is so compelling that it would be a violation of the "fundamental fairness embodied in the Due Process Clause" not to afford a defendant a new trial at which the evidence could be considered. *Walker v. Lockhart,* 763 F.2d 942, 961 (8th Cir.1985) (en banc) (Arnold, J. concurring), *cert. denied,* 478 U.S. 1020, 106 S.Ct. 3332, 92 L.Ed.2d 738 (1986). Obviously, the court must give the new evidence some consideration to determine whether it is inherently credible and substantial enough to warrant a close review.

Where the "newly discovered evidence" consists of witness recantations of trial testimony or confessions by others of the crime, most courts decline to consider it in the absence of any showing that the prosecution knowingly proffered false testimony or failed to disclose exculpatory evidence, or that petitioner's counsel was ineffective. *See, e.g., Armstead,* 720 F.2d 894, 897 (one witness's recantation of trial testimony and confession of another to crime); *Mastrian v. McManus,* 554 F.2d 813, 823 (8th Cir.), *cert. denied,* 433 U.S. 913, 97 S.Ct. 2985, 53 L.Ed.2d 1099 (1977) (recantation of witness). *Cf. Shuler v. Wainwright,* 341 F.Supp. 1061, 1070 (M.D.Fla.1972), *rev'd in part and vacated and remanded in part,* 491 F.2d 1213 (5th Cir.1974) (reliable new evidence that prosecution falsified testimony in initial trial).

▮ In this case, the evidence offered by petitioner's treating psychiatrist appears sufficiently reliable and important that it should be examined. Moreover, the state courts have already considered whether the new evidence could have been discovered before trial with due diligence, and whether it would probably result in an acquittal at a new trial. However, respondent raises an additional ground for not considering the evidence. He contends that any review of the substantiality of the new evidence would be a waste of time because the evidence would be inadmissible at a new trial. Respondent argues that petitioner could not use the evidence to try to persuade a jury he should be convicted of a lessor offense than first degree murder because Wisconsin law does not recognize a claim of imperfect self-defense or manslaughter based solely on the defendant's own delusions. *State v. Seifert,* 155 Wis.2d 53, 68, 454 N.W.2d 346, 352 (1990) (doctrine of imperfect self-defense manslaughter "never intended" to cover situations in which defendant's mental disease or defect entirely motivated actual, unreasonable belief in need to use force). Petitioner contends that *Seifert* would not preclude him from showing that he lacked the

---

unable to incorporate testimony from phase one

into their decision in phase two.

ability to form the intent to commit any crime at all.

 It is a close question whether *Seifert* would bar the introduction of petitioner's newly discovered evidence at the guilt phase of a new trial. The evidence based on petitioner's hypnotically refreshed recollections rested on testimony that petitioner fired at his victims because he mistakenly believed they were Vietnamese people who may have been planning to attack him; such testimony would seem barred by *Seifert*. However, petitioner also contends that the new evidence could support a finding that his mental disease caused him to react instinctively in the bar without ever forming an intent to kill. I agree that *Seifert* does not explicitly preclude petitioner from introducing evidence purporting to show that he was completely unable to form the intent to commit a particular crime. In addition, *Seifert* would not bar introduction of petitioner's new evidence at the mental responsibility phase of a new trial.[4] *Id.* Therefore, I will consider whether the state court erred in determining that petitioner's newly discovered evidence did not warrant a new trial.

Another preliminary issue is the identification of the claim petitioner is raising. Petitioner argues that the states court's rejection of his motion for a new trial is a violation of his constitutional rights to testify, to present witnesses on his behalf, and to a trial by jury. He maintains that he has a right to present to a jury testimony about the diagnosis of post-traumatic stress disorder and his hypnotically refreshed memories. In fact, however, petitioner has no such rights unless he can establish both that his newly discovered evidence could not have been discovered earlier had petitioner used due diligence, and that introduction of the evidence at trial would probably lead to his acquittal.

In reaching its opinion that the expert psychiatric diagnoses of post-traumatic stress disorder did not create a reasonable probability of acquittal, the state courts found that petitioner's hypnotically refreshed testimony would not be admissible at trial. Petitioner contends that this finding violates the rule in *Rock v. Arkansas*, 483 U.S. 44, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987), that exclusion of all posthypnotic testimony infringes impermissibly on a defendant's constitutional right to testify.

Petitioner's challenge misses the mark. Wisconsin does not have a rule excluding all hypnotically refreshed testimony such as the one found unconstitutional in *Rock*. In fact, the state's procedures for determining the reliability of such testimony were cited by the United States Supreme Court in *Rock* as an example of adequate state law procedures. *Id.* at 58 n. 16, 107 S.Ct. at 2712 n. 16 (citing *State v. Armstrong*, 110 Wis.2d 555, 329 N.W.2d 386, *cert. denied*, 461 U.S. 946, 103 S.Ct. 2125, 77 L.Ed.2d 1304 (1983)).

 Petitioner's contends also that the state courts erred in interpreting state law as precluding admission of his hypnotically refreshed testimony at a new trial. Federal courts lack authority to review state court interpretations of their own state's law unless it can be shown that the law or its application violates a federal constitutional right. The challenged ruling does not rise to that level.

 Petitioner's argument is that the state court should not have considered the contradictions between his proposed testimony and the prior testimony of other witnesses in the case, or internal inconsistencies in his testimony, but should have granted him a new trial at which the jury could have determined the issue of credibility. Assessing the reliability of allegedly newly discovered evidence by considering corroborating or contradicting evidence does not amount to a constitutional error. To the contrary, the Supreme Court implied in *Rock* that courts are to consider corroboration or lack of it in assessing the reliability of hypnotically induced testimony. *Rock*, 483 U.S. at 57, 61, 107 S.Ct. at 2712,

---

**4.** The evidentiary standards for determining whether newly discovered evidence warrants a new trial are applicable to both phases of the trial, guilt and mental responsibility. *See Vara v. State*, 56 Wis.2d 390, 393–94, 202 N.W.2d 10, 12 (1972).

2714 (holding that it was improper for state to bar posthypnotic testimony that is corroborated by other evidence and stating that corroborating evidence can be used to verify the accuracy of posthypnotic testimony).

This leaves the question whether the expert psychiatric testimony concerning petitioner's post-traumatic stress disorder diagnosis was so likely to lead to his acquittal that denying him a new trial was a violation of his federal due process rights.

■ The trial court found, and the state court of appeals agreed, that the expert diagnoses did not create a reasonable probability that a jury would conclude that petitioner acted out of a flashback experience in the bar and thereby absolve him of either guilt or responsibility for his conduct. *State v. Coogan,* 154 Wis.2d at 402, 453 N.W.2d at 191–92. This finding is supported by the evidence in the record that patrons at the Four Corners bar heard petitioner make at least three statements to the effect that he was committing a robbery, that he did not say anything associated with Vietnam, that he did not speak in a foreign language; that at the Lounge Bar, petitioner said he had heard on his scanner that there had been a robbery at the Four Corners bar, although he did not possess a scanner and had not been at work that day, and that when police entered the Lounge Bar, petitioner attempted to get rid of his holster.

In view of this evidence in the record that petitioner was not acting out of a flashback of the kind he described to Dr. Arnesen, I agree with the state court's conclusion that the new evidence of petitioner's post-traumatic stress disorder was not so substantial that it would probably

result in petitioner's acquittal if he were to be retried.

With respect to petitioner's proffered new evidence in the form of lay testimony, the state appellate court held that the testimony did not constitute newly discovered evidence because it was available at the time of trial. Petitioner argues that the evidence could not have been discovered at that time because counsel could not have known to focus on this type of evidence before they knew of the diagnosis of petitioner's disorder.

■ However, the lay evidence does not flow only from the diagnosis of post-traumatic stress disorder. As the state court of appeals found, the testimony was available at the time of trial even though petitioner had not considered it in the context of post-traumatic stress disorder; the diagnosis merely provided another way in which to view the lay testimony. The court held that a new *perspective* on pre-existing evidence is insufficient to make such testimony new *evidence,* citing *Vara v. State,* 56 Wis.2d 390, 394, 202 N.W.2d 10, 12 (1972). The record supports the finding that lay testimony about petitioner's unusual behavior existed at the time of trial. Furthermore, the evidence could have been introduced at that time as evidence that petitioner suffered from some sort of mental defect or disease. Dr. Roberts testified initially that petitioner had some sort of Vietnam-related illness, and counsel considered and dismissed the idea of "combat fatigue."[5] I see no reason to disagree with the state court's determination that the lay testimony does not constitute "newly discovered evidence" entitling petitioner to a new trial.

Accordingly, I will deny petitioner's request for habeas corpus relief. I agree with the state court that petitioner's new

---

**5.** Respondent argues that petitioner's evidence that he suffers from post-traumatic stress disorder is also not "newly discovered evidence" because it could have been discovered with diligence at the time of the original trial. Although it is possible that petitioner could have been diagnosed as suffering from the disorder in 1979, it is also true that the condition was not as widely recognized then as it is now, and that

petitioner had not yet been through the hypnosis that allegedly helped him to recall some of his traumatic wartime experiences. The present record does not permit me to conclude that the diagnosis of post-traumatic stress disorder could have been made earlier with due diligence on petitioner's part, so that it does not constitute newly discovered evidence.

evidence is not so substantial that it would violate due process to deny petitioner a new trial at which he could introduce it.

### III. FUNDAMENTAL FAIRNESS

As his final asserted ground for habeas corpus relief, petitioner requests a retrial as a matter of fundamental fairness because he has not yet been permitted to present the essence of his case to a jury.

Specifically, petitioner objects to counsel's failure to present Dr. Roberts's testimony in phase two of the trial, to Dr. Roberts's role in determining the admissibility of his testimony, to Dr. Roberts's failure to diagnose the link between petitioner's Vietnam experiences and his mental condition at the Four Corners tavern, and to the state courts' exclusion of petitioner's hypnotically refreshed testimony when the hypnotist, Dr. Arnesen, was chosen by the prison system to treat prisoners and was not selected by petitioner for the purpose of litigation.

I have considered and upheld the state courts' denial of each of the claims underlying these contentions. I am not persuaded that they warrant relief when considered as a whole. The jury heard a substantial amount of testimony from Dr. Roberts in phase one, and most of petitioner's proffered new evidence is inadmissible or does not legally constitute "new evidence" warranting a retrial. I agree with the state court of appeals that there is minimal likelihood that a new trial would produce a different result. In view of these findings, fundamental fairness does not require that petitioner be granted a new trial on the basis of his other objections. Therefore, I will deny this petition for a writ of habeas corpus.

Dated: April 15, 1991.