61 F.3d 905
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Roosevelt CLAY, Petitioner-Appellant,
v.
K. COOPER, Warden, Respondent-Appellee.
 No. 94-3317.
 United States Court of Appeals, Seventh Circuit.
 Argued June 13, 1995.
Decided July 11, 1995.
 
 Before POSNER, Chief Judge, and CUMMINGS and RIPPLE, Circuit Judges.
 
 ORDER
 
 1
 Petitioner Roosevelt Clay appeals the denial, without a hearing, of his petition for writ of habeas corpus challenging his state court conviction of three counts of murder. Clay argues that the district court erred in denying his petition without holding an evidentiary hearing to review (1) Clay's allegations that he was convicted on the basis of involuntary confessions and (2) "newly discovered" evidence which the state trial court considered but concluded would not have changed its decision to suppress Clay's confessions. Because Clay's petition failed to allege facts other than those already in the record or to demonstrate that he was denied a fair opportunity to present his case in the state courts, we affirm the district court's determination that a federal evidentiary hearing was not warranted.
 
 BACKGROUND
 
 2
 The facts surrounding Clay's confessions and state court proceedings are detailed in the opinion of the Illinois Appellate Court in People v. Clay, 211 Ill. App. 3d 291, 570 N.E.2d 335 (1st Dist. 1990).
 
 
 3
 In 1975, Clay was subpoenaed to appear before a Cook County grand jury regarding the murder of three persons in Chicago, Dr. Lawrence Gluckman and his two patients, Tressie Harris and Minnie Harris. Clay testified that he had no knowledge about the killings of the three individuals. He was not charged.
 
 
 4
 In early 1983, Clay was named as defendant in two armed robbery cases pending in two different courts in Cook County. In February 1983, in an effort to prove that he was framed for the first armed robbery, Clay phoned the Federal Bureau of Investigation (FBI) in Chicago, and agreed to furnish them with information about three individuals, Chuck Renzeno, Mike Switek, and Willie Carter, who he believed had set him up. Although Clay provided the FBI with information about drug trafficking, the information was not supplied as part of any plea negotiations.
 
 
 5
 In May 1983, a jury found Clay guilty of the first of the two armed robbery charges. Within the next few weeks, Clay phoned the FBI again and asked if they would help him. Clay maintained that he continued to cooperate with the FBI because agents told him they would aid in his effort to receive a concurrent minimum sentence of six years for both armed robbery charges when he pled guilty to the second armed robbery. Clay contended that the FBI told him that he had to provide information on something of interest to state authorities in order for the FBI to help him out on the second robbery charge.
 
 
 6
 On June 6, while in custody, Clay phoned the FBI again. He informed them that he could provide them with information about a murder that took place in Wisconsin in 1982. Clay testified that it was at this time that he entered into plea negotiations with the FBI to get concurrent sentences for the two armed robberies. The state contended that Clay voluntarily supplied information about the Wisconsin murder.
 
 Clay's Confessions
 
 7
 On June 13, 1983, two FBI agents, including Scott Jennings, went to the Cook County Jail to interview Clay. They read Clay his Miranda rights and had him sign a waiver of rights form. Clay told the agents that he was involved in a homicide in Wisconsin and a triple homicide in Chicago. This meeting marked the first occasion that Clay told the FBI about the Chicago murders. He testified that, before he furnished the FBI with this information, the FBI agreed to arrange that he receive concurrent, minimum sentences on the state armed robberies. Clay testified that the only reason he told the FBI about the murders after eight years "was to make a deal.... The deal on concurrent time. I was facing consecutive time. I just got found guilty for one armed robbery." On cross-examination, however, Clay admitted that, before he contacted the FBI on June 6, he learned that Willie Carter had raped or attempted to rape the mother of his two-year-old son. Clay admitted that he was angry at Carter and wanted to get even. The state contended that this was Clay's motivation for inculpating himself and Carter in the murders.
 
 
 8
 Jennings subsequently arranged for Clay to talk with two Chicago police officers involved in the homicide investigation. On August 29, 1983, Clay repeated the information about the murders to the police officers. Clay conceded at trial that these officers advised him of his rights and told him that they could make no promises.
 
 
 9
 In December 1983, Clay was sentenced to nine years in prison for the first armed robbery conviction. No FBI agent spoke on his behalf at the sentencing hearing. In January 1984, Clay pled guilty to the second armed robbery charge and received a second nine-year sentence to run concurrently with the first nine-year term.
 
 
 10
 Clay's Prosecution for the Three Chicago Murders
 
 
 11
 In September 1984, Clay was indicted for the three 1975 murders in Chicago. Before trial, in May 1988, Clay moved to suppress the statements that he had made in June and August 1983 to the FBI and Chicago police officers, implicating him and others in the triple murder. After hearing arguments and testimony, the state trial court denied Clay's motion to suppress. The court found that Clay was told on several occasions that the FBI could make no promises or deals but would advise the prosecutors of his cooperation if he did choose to cooperate. The trial court found Clay's statements to be voluntary:
 
 
 12
 [W]hile there might be an argument made that these statements were made by Mr. Clay to get a lesser sentence[,] [t]here might also be an argument made that those statements were made by the defendant to get Mr. Switek and Mr. Carter. ... [T]here is no objective way that we can categorize what transpired here as plea negotiations or plea agreements or plea discussions. He was told time and time again that there were no deals, that the FBI could make no deals. The Chicago Police Department advised him at least one time ... they could make no deals. He was admonished. He signed a waiver indicating that there were no deals. These discussions, in the court's mind, cannot under any reading of the facts in this case be called plea negotiations. There was no coercion. There was no promise. The statements were voluntary.
 
 
 13
 (Tr. of Motion to Suppress Statement of 5/2/88, at 199-200.)
 
 
 14
 The case proceeded to trial, and a jury found Clay guilty of the murders of Dr. Gluckman and his two patients. Clay was sentenced to three concurrent terms of 60 to 180 years in prison.
 
 
 15
 Clay's Motion for a New Trial Based on Newly Discovered Evidence
 
 
 16
 In 1989, while his appeal was pending, Clay was indicted for the 1982 murder in Wisconsin about which he had told the FBI agents. During preparation for his trial in Wisconsin, Clay learned that Waukesha, Wisconsin police chief Richard Sader had spoken with Agent Jennings about the Wisconsin murder on June 6, 1983, the same day that Clay first admitted to Jennings that he had participated in the crime. Clay also learned that Sader had prepared a police report describing the contents of this conversation with Jennings. According to the report, Jennings told Sader on June 6, 1983 that "they had a black male in custody who they believed might be responsible for the murder of Ernest Kamrath ..." The report stated further that "[t]his black male was in the process of attempting to arrange a deal to lessen charges against him and in turn was to supply information as to the party or parties responsible for the Ernest Kamrath shooting."
 
 
 17
 Clay contended that this information constituted newly discovered evidence, and moved for a new trial. Clay argued that this information demonstrated that Clay and Jennings had engaged in plea negotiations in Illinois one week before Clay confessed to the triple homicide in Chicago. Had this evidence been presented to the court during the pretrial suppression hearing, Clay continued, the court probably would not have admitted his confessions into evidence.[1] The trial court denied Clay's motion for a new trial. It held that the new evidence would not have affected its ruling on Clay's motion to suppress.
 
 
 18
 In a consolidated appeal, Clay challenged both the 1988 triple murder conviction and the ruling denying a new trial based on the newly discovered evidence. The appellate court affirmed the judgment of the trial court and found no abuse of discretion in the denial of Clay's motion for a new trial. People v. Clay, 211 Ill. App. 3d 291, 570 N.E.2d 335 (1st Dist. 1990). After the Illinois Appellate Court denied rehearing, and the Illinois Supreme Court denied leave to appeal, Clay filed his petition for writ of habeas corpus.
 
 
 19
 The district court denied Clay's petition. It concluded that neither the FBI nor the Chicago police officers promised Clay that he would not be prosecuted for the triple murder in Chicago, and that Clay's confessions were therefore voluntary. The district court also held that the newly discovered evidence would not have led to a different result. Clay appeals.
 
 DISCUSSION
 
 20
 I. Denial of Evidentiary Hearing on Clay's Confessions
 
 
 21
 Clay's principal argument on appeal is that the district court erred in denying his petition without holding an evidentiary hearing on the voluntariness of his confessions. His 39-page brief, however, fails to specify why a federal evidentiary hearing is warranted. The determination of whether an evidentiary hearing is warranted involves application of a two-pronged test. First the petitioner bears the burden of "alleg[ing] facts which, if proved, would entitle him to relief." Townsend v. Sain, 372 U.S. 293, 312 (1963), overruled in part by Keeney v. Tamayo-Reyes, 504 U.S. 1 (1992). If the petitioner satisfies this burden, then an evidentiary hearing is mandated "'if the habeas applicant did not receive a full and fair evidentiary hearing in a state court, either at the time of the trial or in a collateral proceedings."' Resnover v. Pearson, 965 F.2d 1453, 1456 n.2 (7th Cir. 1992) (quoting Townsend, 372 U.S. at 312), cert. denied, 113 S. Ct. 2935 (1993); see also Keeney, 504 U.S. at 10.
 
 
 22
 In denying Clay's request for an evidentiary hearing, the district court explained that the state record provided all the information needed for a satisfactory determination of the issues raised in Clay's petition. "The state record," the court noted, "includes all the necessary evidence to determine whether Clay's confession was involuntary, including both Jennings' testimony at the Wisconsin trial and the Waukesha police report." Clay v. Cooper, No. 94 C 327, slip op. at 12.
 
 
 23
 We agree with the district court's conclusion not to grant an evidentiary hearing. First, Clay has not alleged any specific facts that would entitle him to relief other than the facts adduced at the state court proceedings.[2] Nor can Clay satisfy the second prong of the test for an evidentiary hearing; he had a fair opportunity to present his case in state court proceedings, and the determinations in those proceedings are supported by the record. At trial, it was shown that Clay was the one who contacted the FBI with information of a murder, motivated possibly by his desire to get even with Willie Carter; he was fully advised of his Miranda rights; he signed a waiver of rights form; and he agreed to make a statement. The district court did not err in denying Clay an evidentiary hearing on voluntariness.
 
 
 24
 II. Denial of Evidentiary Hearing on Clay's "Newly Discovered" Evidence
 
 
 25
 Clay also argues that the district court erred in refusing to hold an evidentiary hearing regarding the "newly discovered" evidence which surfaced at the time of the Wisconsin murder trial. Clay contends that this evidence would serve (1) to prove that plea discussions were underway when he made his confessions and (2) to impeach Agent Jennings on his recollection of these events.
 
 
 26
 As a general rule, newly discovered evidence that relates only to the petitioner's guilt or innocence is not reviewable by a federal court on a motion for habeas corpus relief. Herrera v. Collins, 113 S. Ct. 853, 860 (1993); Townsend, 372 U.S at 317. Federal courts may take newly discovered evidence into account only to the extent that it bears upon the petitioner's constitutional claims. Milone v. Camp, 22 F.3d 693, 701 (7th Cir. 1994) (citing Herrera, 113 S. Ct. at 860), cert. denied, 115 S. Ct. 720 (1995). It is not enough, however, that the evidence be "newly discovered" and relate to a constitutional violation; the petitioner must also show that the newly discovered evidence would probably have resulted in an acquittal. Coogan v. McCaughtry, 958 F.2d 793, 802 (7th Cir.), cert. denied, 113 S. Ct. 495 (1992).
 
 
 27
 We agree with the district court's decision to reject Clay's plea for an evidentiary hearing based on this "newly discovered" evidence. "Newly discovered" evidence refers to evidence which "'the petitioner reasonably either did not know about ... or could not have presented ... it at an earlier proceeding."' United States ex rel. Shore v. O'Leary, 833 F.2d 663, 669 (7th Cir. 1987) (quoting Townsend, 372 U.S. at 317). Here, Clay presented the evidence to the state trial court with his motion for a new trial. The trial court carefully examined this evidence in deciding to deny Clay's motion for a new trial. The Illinois Appellate Court subsequently concluded that the trial court acted within its discretion in denying the motion for a new trial. Because the state record included all the evidence necessary to determine whether Clay's confessions were involuntary, including both Jennings' testimony at the Wisconsin trial and the Waukesha police report, a federal evidentiary hearing was not necessary. Finally, we cannot say that the state trial court committed constitutional error in determining that the information was not so substantial that it would have resulted in Clay's acquittal.
 
 Conclusion
 
 28
 Because Clay's petition for habeas relief failed to allege new facts or the denial of a fair opportunity to present his case during the state proceedings, the district court committed no error in concluding that a federal evidentiary hearing was not warranted. The district court also correctly decided that Clay is not entitled to an evidentiary hearing on his "newly discovered" evidence because the state courts carefully considered such evidence. Accordingly, the judgment of the district court is affirmed.
 
 
 29
 AFFIRMED.
 
 
 
 [1]
 Clay also supplemented his motion for new trial with a transcript of testimony given by Jennings in September 1989 during Clay's trial for the 1982 Wisconsin murder. At this trial, Jennings was asked, "And did Roosevelt Clay indicate to you that he was trying to work out a deal to lessen charges and wanted your help?" Jennings responded, "Yes, sir." Clay suggests that this testimony further corroborates his position that plea negotiations were ongoing when he made his confessions
 
 
 [2]
 See Rosenwald v. United States, 898 F.2d 585, 588 (7th Cir. 1990) (remanded for evidentiary hearing because important issues of fact involving legal ethics were not adequately developed at trial; Weidner, 866 F.2d at 963 ("[w]e are reluctant to decide a difficult question on hypothetical facts"; habeas petitioner entitled to hearing on issue of whether his confession had been coerced); Smith v. Duckworth, 856 F.2d 909, 913 (7th Cir. 1988) (remanded for evidentiary hearing because evidence in record was insufficient to determine effect of petitioner's unlawful incarceration on voluntariness of his confession); cf. Matta-Ballesteros v. Henman, 896 F.2d 255, 258 (7th Cir.) ("[A]n evidentiary hearing is not necessary when the facts essential to consideration of the constitutional issue are already before the court."), cert. denied, 498 U.S. 878 (1990)